**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| **KAREN MERROW, THOMAS JORDAN, and MICHAEL CROSS, on behalf of the P.L. Marketing, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**HORIZON BANK d/b/a/ HORIZON TRUST & INVESTMENT MANAGEMENT, THOMAS J. SCHUH, and TIMOTHY M. LOGSDON,**<br><br>**Defendants.** | **Case No.** |

## COMPLAINT

Plaintiffs Karen Merrow, Thomas Jordan, and Michael Cross, by their undersigned attorneys, on behalf of the P.L. Marketing, Inc. Employee Stock Ownership Plan, and similarly situated participants in the Plan and their beneficiaries, allege upon personal knowledge, the investigation of their counsel, their counsel's knowledge and experience in ESOPs and the practices of ESOP trustees and their advisors, and upon information and belief as to all other matters, as to which allegations they believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1.      Plaintiffs Karen Merrow, Thomas Jordan, and Michael Cross ("Plaintiffs") bring this suit against Horizon Bank d/b/a Horizon Trust & Investment Management ("Horizon"), the fiduciary trustee for the P.L. Marketing, Inc. Employee Stock Ownership Plan (the "Plan" or the "ESOP") when the Plan acquired shares of P.L. Marketing, Inc. ("PLM") in 2017; and Thomas J.

Schuh and Timothy M. Logsdon ("Selling Shareholders"), the party in interest shareholders from whom the Plan acquired the stock.

2.      Plaintiffs are participants in the Plan, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who were vested under the terms of the Plan in shares of PLM allocated to their accounts in the Plan.

3.      This action is brought under Sections 404, 406, 409, 410, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, 1110, and 1132(a), for losses suffered by the Plan and its participants caused by Horizon when it caused the Plan to buy shares of PLM for more than fair market value, and other plan-wide relief.

4.      As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA.

5.      At all relevant times, PLM was a privately held company and a party in interest to the Plan. PLM adopted the Plan effective January 1, 2017. On June 6, 2017, the Plan purchased from the party in interest Selling Shareholders 1,000,000 shares of PLM's common stock for $53,000,000, which was financed by a loan from PLM of $53,000,000 with an interest rate of 3.50% annually to be repaid over 20 years (the purchase and loan transactions together, the "ESOP Transaction" or "Transaction").

6.      As a result of the ESOP Transaction, PLM became 100% owned by the ESOP and the PLM employees who participated in it.

7.      Horizon represented the Plan and its participants as fiduciary trustee in the ESOP Transaction. It had sole and exclusive authority to negotiate the terms of the ESOP Transaction and to authorize the Transaction on the Plan's behalf. The stock and loan transactions that

Horizon caused the Plan to enter into with parties in interest are *per se* violations of ERISA's prohibited transaction rule, ERISA § 406(a), 29 U.S.C. § 1106(a).

8.       The ESOP Transaction allowed Selling Shareholders to unload their interests in PLM above fair market value, for the reasons explained below, and saddle the Plan with tens of millions of dollars of debt over a 20-year repayment period to finance the Transaction. Horizon failed to fulfill its ERISA duties, as trustee and fiduciary, to the Plan and its participants, including Plaintiffs.

9.       Selling Shareholders are parties in interest who sold shares in the ESOP Transaction and received proceeds from the Transaction. Selling Shareholders are liable under ERISA for knowingly participating in the prohibited stock transaction and Horizon's breaches of fiduciary duty under ERISA.

10.       Through this action, Plaintiffs seek to enforce their rights under ERISA and the Plan, to recover the losses incurred by the Plan and the improper profits realized by Defendants resulting from their causing prohibited transactions and breaches of fiduciary duty or knowingly participating in prohibited transactions and breaches of fiduciary duty, and equitable relief, including reformation of ESOP Transaction contracts, rescission of the ESOP Transaction, and enjoining Horizon from acting as a fiduciary for any employee benefit plan that covers or includes any PLM employees or members of the Class. Plaintiffs request that these prohibited transactions be declared void, Defendants be required to restore any losses to the Plan arising from their ERISA violations, Defendants be ordered to disgorge to the Plan any improper profits, and any monies recovered for the Plan to be allocated to the accounts of the Class members.

## JURISDICTION AND VENUE

11.    This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiffs under ERISA § 502(a), 29 U.S.C. § 1132(a), to require Horizon to make good to the Plan losses resulting from its violations of the provisions of Title I of ERISA, to obtain appropriate equitable relief against Horizon and Selling Shareholders, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable relief and legal remedies in order to redress violations and enforce the provisions of ERISA.

12.    This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

13.    Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District, because some of the events or omissions giving rise to the claims occurred in this District, and because one or more Defendants reside or may be found in this District. The Plan is administered in Newport, Kentucky.

## PARTIES

14.    Plaintiff Karen Merrow is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since the adoption of the Plan effective on January 1, 2017. Plaintiff Merrow resides in Milledgeville, Georgia. She held several positions at PLM, the most recent being a Retail Merchandising Manager. She was employed there from 2004 to 2019. She was vested in shares of PLM in her Plan account.

15.    Plaintiff Thomas Jordan is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since the adoption of the Plan effective on January 1, 2017. Plaintiff

Jordan resides in Marietta, Georgia. He was a Set Team Member at PLM. He was employed there from 2015 to 2020. He was vested in shares of PLM in his Plan account.

16.     Plaintiff Michael Cross is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since the adoption of the Plan effective on January 1, 2017. Plaintiff Cross resides in Alexander, Arkansas. He was a Set Team Member at PLM. He was employed there from August 2014 to December 2020. He was vested in shares of PLM in his Plan account.

17.     Defendant Horizon Bank is an Indiana commercial bank that provides investment management services, offering estate and retirement planning, financial management, and trust services. Its headquarters is at 515 Franklin St., Michigan City, Indiana 46360.

18.     Horizon was the Trustee of the Plan at the time of the ESOP Transaction. Horizon was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it was the trustee within the meaning of ERISA § 403(a), 29 U.S.C. § 1102(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

19.     Defendant Thomas J. Schuh was at the time of the ESOP Transaction the President, the Treasurer, and a Director of PLM. He was a selling shareholder in the ESOP Transaction. He resides or may be found in this District. He resides in Villa Hills, Kentucky, and is a Director of PLM, headquartered in Newport, Kentucky.

20.     Defendant Thomas J. Schuh was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction as a PLM officer, director, and 10 percent or more shareholder of PLM, directly or indirectly. Defendant Schuh was also a party in

5

interest to the Plan at the time of the ESOP Transaction as an officer or director, or as an individual having powers or responsibilities similar to those of officers or directors, of 360 Merchandising Solutions, LLC ("360 Merchandising"), a PLM subsidiary whose employees are also covered by the Plan.

21.     Defendant Timothy M. Logsdon was at the time of the ESOP Transaction the Secretary, the Vice President, and a Director of PLM. He was a selling shareholder in the ESOP Transaction. He resides or may be found in this District. He resides in Union, Kentucky, and is a Director of PLM, headquartered in Newport, Kentucky.

22.     Defendant Timothy M. Logsdon was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction as a PLM officer, director, and 10 percent or more shareholder of PLM, directly or indirectly. Defendant Logsdon was also a party in interest to the Plan at the time of the ESOP Transaction as an officer or director, or as an individual having powers or responsibilities similar to those of officers or directors, of 360 Merchandising.

## **FACTUAL ALLEGATIONS**

23.     Founded in 1989, PLM bills itself as a company assisting the sales and merchandising of Corporate Brand consumer products for The Kroger Company, the nation's largest supermarket retailer, and providing a multitude of merchandising and operational services for Kroger's General Office, divisions, and stores. Kroger is PLM's only client. PLM's headquarters is in Newport, Kentucky, minutes from The Kroger Company's General Office. In addition to its Newport location, PLM has representation in Kroger division offices throughout the Midwest and South.

24.     PLM was incorporated in Ohio on July 24, 1989.

25.     PLM is headquartered at Riverfront Place, 300 Dave Cowens Drive, 8th Floor, Newport, Kentucky 41071. That address is listed as the Plan Administrator's address in the Plan's Summary Plan Description dated June 2017 ("SPD").

26.     PLM stock is not and never was readily tradeable on an established securities market.

27.     360 Merchandising was formed in Kentucky in December 2016 as a wholly owned subsidiary of PLM. 360 Merchandising is a Grocery/ Perishables/ HBC (health and beauty care) Broker exclusive to Kroger. 360 Merchandising is headquartered at Riverfront Place, 300 Dave Cowens Drive, Suite 1005, Newport, Kentucky 41071. 360 Merchandising states it "was developed to focus on the strategic growth of our clients' consumer products portfolio at Kroger -the nation's largest grocery retailer. We work directly with the Kroger Category Managers & Procurement Managers to bring the highest quality grocery, frozen, dairy & non-foods brands to the shelf for consumers."

28.     PLM adopted the Plan with an effective date of January 1, 2017.

29.     The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

30.     The Plan is a leveraged employee stock ownership plan, or "Leveraged ESOP." The Plan was designed to invest primarily in the employer securities of PLM.

31.     The Plan's principal asset was PLM stock at all times since the ESOP Transaction.

32.     The Plan is an individual account plan, or defined contribution plan, under which a separate individual account was established for each participant.

33.     Employees of PLM and 360 Merchandising are covered by and participate in the Plan.

34.     PLM is and was from the inception of the Plan the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

35.     The Plan's Forms 5500 identify PLM as the sponsor and administrator of the Plan.

36.     The Plan's SPD discloses that PLM is the administrator of the Plan.

37.     PLM is and was the Plan's administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

38.     PLM is and was an ERISA fiduciary to the Plan as its administrator.

39.     PLM is a named fiduciary under the terms of the Plan document, within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a).

40.     The Schedule H, Line 4i, Schedule of Assets (Held at End of Year) in the Plan's Forms 5500 represent that PLM is a party in interest to the Plan.

41.     PLM is and was at the time of the ESOP Transaction a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

42.     PLM and 360 Merchandising employees who are not covered by a collective bargaining agreement, or who are covered by a collective bargaining agreement that specifically refers to the ESOP and provides for coverage under the Plan, must meet two requirements to participate in the Plan: (1) be age 21 or older; and (2) complete at least 1,000 Hours of Service within their initial Employment Year or any Plan Year thereafter.

43.     Employees do not have a choice whether to participate in the Plan as part of their compensation package or to choose other compensation for their labor. Participation in the Plan

is automatic and employees cannot change or stop their participation in the Plan while employed at PLM and 360 Merchandising. The Plan's SPD informs participants: "Once you meet these requirements, you will automatically become a Participant on the following January 1 or July 1 (each, an *"Entry Date"*), if you remain employed by the Employer on that date. . . . You do not have to take action to enroll in the ESOP, and you may not change or stop your participation in this Plan during your employment by the Employer."

44.     Plaintiffs were automatically enrolled in the Plan under the Plan's terms, without their election or assent. Because they worked sufficient Hours of Service, Plaintiffs were allocated PLM stock to their Plan accounts during their employment, in which they were vested under the Plan's terms.

45.     Plaintiffs' efforts on the job played a role in the value of the PLM stock owned by the Plan and allocated to participants' individual accounts, including their own. The SPD acknowledges: "each ESOP Participant plays an important role in determining P.L. Marketing's financial performance. This is the direct link between your efforts on the job and the value of your ESOP Account." The SPD states further: "your efforts influence the future success of P.L. Marketing, Inc.; those efforts now also influence the value of your retirement Account in the ESOP." And it states: "With the ESOP, you now share in the benefits of the Company's growth and profitability as well as enjoy competitive pay and other benefits."

46.     As Trustee for the Plan, it was Horizon's duty to ensure that any transactions between the Plan and Selling Shareholders and between the Plan and PLM, including acquisitions of PLM stock by the Plan and loans to the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value.

47.     PLM appointed Horizon as Trustee of the Plan prior to the ESOP Transaction, at a time when Selling Shareholders owned the company and controlled it as the sole directors and senior officers. As Trustee, Horizon had sole and exclusive authority to negotiate and approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for PLM stock. Selling Shareholders, who were the seller-side in the ESOP Transaction, therefore chose the buyer-side counter-party trustee in the Transaction.

48.     Horizon received consideration from PLM for its services in the ESOP Transaction to the buyer-side Plan, in the form of fees and an unlawful indemnification agreement, under a contract made when the Selling Shareholders owned and ran PLM.

49.     The Notes to Financial Statements of the Plan's 2017 Form 5500 explains that the Plan's administrative expenses for 2017 were paid by PLM.

50.     On June 6, 2017, the Plan purchased from Selling Shareholders 1,000,000 shares of PLM's common stock for $53,000,000.

51.     At that time, PLM became 100% employee owned through their ESOP.

52.     The Plan's purchase of the PLM shares was financed by a loan from PLM of $53,000,000, bearing an interest rate of 3.50%, annually, to be repaid over 20 years.

53.     The Notes to Financial Statements in the Plan's Forms 5500 report that the Plan's investment in PLM common stock and indebtedness to PLM were party-in-interest transactions.

54.     The Plan's 2017 and 2018 Forms 5500s were signed by Defendant Logsdon on behalf of PLM, as plan administrator, under penalty of perjury. The Plan's 2019 and 2020 Forms 5500 were signed by PLM Vice President Nicholas Basch on behalf of PLM, as plan administrator, under penalty of perjury.

10

55.     Selling Shareholders were Directors of PLM prior to the ESOP Transaction, at the time of the 2017 ESOP Transaction, and after the ESOP Transaction to the present. Defendant Schuh was the President of PLM prior to and at the time of the ESOP Transaction, and Defendant Logsdon became the President of PLM within a year after the ESOP Transaction and held that title or the title of Chief Executive Officer (CEO) until in or about 2020. At the time of the ESOP Transaction, Defendant Logsdon was PLM's Secretary and Vice President.

56.     Two additional PLM Directors were appointed after the ESOP Transaction. Selling Shareholders at all times controlled PLM through their status as Directors, their authority and/or influence in appointing Directors, due to the company debt they held as sellers in the ESOP Transaction, and due to the officer positions they held or otherwise controlled by appointment. PLM's current senior officers are former lieutenants of Selling Shareholders during their presidencies.

57.     Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery, based on undersigned counsel's knowledge of ESOP-creation business practices gleaned from counsel's experience prosecuting many private company ESOP cases. It is common practice in the ESOP creation industry for plans to pay for control when the plans acquire more than 50% of company stock because ESOP trustees assume majority ownership equates to control. Typically, however, control in fact remains with the selling shareholders who control the board and senior management and through them retain control. Further, the company or board can fire the trustee if it does not cooperate, making the voting powers associated with majority ownership illusory. The Trustee here, Horizon, operated in the same manner, as detailed below. The Plan paid a control premium or on a control basis for PLM even though the Plan did

not obtain control over the PLM Board of Directors upon its 2017 purchase of the company. Further, the Plan did not receive a discount for lack of control. The Plan therefore overpaid for PLM. Selling Shareholders retained control of the Board as a result of warrants received in exchange for their PLM shares and other Transaction and/or corporate documents.

58.     As Trustee, Horizon is subject to liability for a payment by the Plan of more than fair market value for PLM stock caused by the Plan's payment of a control premium or on a control basis where a previous owner or owners retained control of PLM, the Plan's failure to receive a discount for lack of control, and/or other factors in Horizon's faulty valuation of PLM in the ESOP Transaction.

59.     PLM has long touted its overreliance exclusively on Kroger's business as an advantage. For example, PLM's website states: "**We Are Loyal.** We are loyal to each other, to Kroger and their valued suppliers. We do not have divided interests. We are not beholden to or distracted by other clients. P.L. Marketing is 100% dedicated to The Kroger Co. and their valued suppliers. We know exactly who we serve and that creates an exceptional level of dedication and commitment."

60.     PLM's subsidiary 360 Merchandising likewise touts on its website that it is: "Proudly and **Exclusively Servicing** the Kroger Family."

61.     There is danger inherent in this business model of reliance on a single customer, which was realized here.

62.     Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. In the months leading up to the ESOP Transaction and after the ESOP Transaction, in addition to decreasing the number of employees, PLM reduced the number and size of its teams

and decreased the number of open positions. In the months leading up to the ESOP Transaction and after the ESOP Transaction, PLM's new store projects and store remodels were cancelled or further delayed.

63.    PLM's overreliance on Kroger culminated in 2020 with a reduction in force at PLM of approximately 40% when Kroger did not renew contracts. The notes to the financial statements in the Plan's 2019 Form 5500, filed on October 12, 2020, stated: "During 2020, several service contracts with the Company's main customer were not renewed. This nonrenewal is expected to result in a reduction of gross sales of the Company."

64.    The notes to the financial statements in the Plan's 2020 Form 5500, filed on October 13, 2021, stated: "During 2020, several service contracts with the Company's main customer were not renewed. This nonrenewal resulted in a significant reduction of the Company's workforce. Under ERISA, a partial plan termination may occur if a significant percentage of the Plan participants are terminated due to actions taken by the Plan Sponsor. The workforce reduction of approximately 40% of the Company's employees constituted a partial plan termination as defined by ERISA, which occurs if 20% or more of plan participants are terminated."

65.    PLM's lost contracts with Kroger resulted in PLM no longer serving all Kroger divisions, losing four single-source divisions, and reduced Our Brands retail support.

66.    PLM issued Worker Adjustment and Retraining Notification Act ("WARN") notices in 2020. PLM reported the layoffs or furloughs were permanent and cited a contract loss as the rationale. The affected workers were distributed across several states, including Kentucky, Ohio, Indiana, and West Virginia.

67.     Horizon's appraisal of PLM stock in the ESOP Transaction was based upon a combination of income and market valuation techniques. PLM management provided financial projections to Horizon for the valuation of PLM in the ESOP Transaction, which were unreasonably optimistic. On information and belief, the appraisal used as comparables companies that differed from PLM, including by not being reliant on the business of a single customer.

68.     In breach of their duty of loyalty to plans and their participants and beneficiaries, ESOP trustees have defined and employed deficient "industry" standards for themselves alone that deviate from sound business practices employed by non-ESOP buyers in the so-called "real world" and required by ERISA. Incentives to Horizon to fail to exercise care, skill, prudence and diligence in the interest of Plan participants and beneficiaries in the ESOP Transaction by failing to apply sound business principles of evaluation and to conduct a prudent investigation and negotiation included the possibility of business from sellers of companies who understood that Horizon applied a lesser degree of due diligence in ESOP purchases of businesses than is typical for non-ESOP-buyers' purchases of businesses, referrals for such work by other service providers in the ESOP creation and administration business, and engagement as the Plan's ongoing trustee after the ESOP Transaction and the fees paid for that engagement.

69.     Every defense expert counsel has seen testify on the standards of care has talked about ESOP trustee standards rather than hypothetical prudent persons or hypothetical well-informed buyers and sellers; such testimony tries to create insular and self-fulling standards that are incompatible with ERISA standards.

70.     Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or

discovery, based on undersigned counsel's knowledge of ESOP-creation business practices gleaned from counsel's experience prosecuting many private company ESOP cases. Horizon did not perform due diligence in the course of the ESOP Transaction similar to the due diligence that is performed by third-party buyers in large corporate transactions. Horizon's due diligence in the ESOP Transaction was less extensive and thorough than the due diligence performed by third-party buyers in corporate transactions of similar size and complexity. The Plan overpaid for PLM stock in the ESOP Transaction due to Horizon's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate comparable companies, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered its valuation of PLM stock in the ESOP Transaction faulty. The Plan paid too much for a company dependent on one customer, Kroger, and aside from overreliance on Kroger, the Plan paid too much based on Horizon's substandard due diligence and improper valuation.

71.     "[T]he ESOP world [is] a very incestuous community" because of the "significant long-term business relationships" resulting from parties working together in many ESOP deals, and ESOP trustees maintain "extensive and lucrative business relationships" with seller-side advisors. *See Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 771, 779 (4th Cir. 2019) (citation omitted). On information and belief, Selling Shareholders, through PLM, appointed Horizon to be the buyer-side trustee on advice of their seller-side ESOP advisors, as is common. An unconflicted independent fiduciary did not make the appointment.

72.     Horizon was rewarded with engagement as the Plan's ongoing trustee by the Selling Shareholders, who still controlled PLM, after completing the ESOP Transaction to their satisfaction.

73.     As of December 31, 2020, the Plan still had $42,400,000 in acquisition indebtedness on the $53,000,000 stock purchase loan. That is, only $10,600,000 worth of PLM stock was paid off in the latest Form 5500 report, and the Plan was in debt for the rest.

74.     However, carrying on bad appraisal practices from the time of the ESOP Transaction, the Plan reported in public Form 5500 filings that the PLM stock had a current value of $87,140,000 at year end 2019, and $63,460,000 at year end 2020. The Plan's valuation techniques have been "consistent" at all times, according to the Form 5500 notes to financial statements, and the Plan's apparent mis-valuation of PLM stock in annual Forms 5500 after the Transaction is further circumstantial evidence the stock was overvalued in the 2017 Transaction.

75.     The Plan suffered losses due to the overvaluation of PLM stock in the ESOP Transaction and its overpayment for the stock, in an amount to be determined following discovery and expert analysis of non-public information concerning Horizon's and its financial advisor's valuation and due diligence methodologies, PLM financials and growth projections, and other documents and information that were considered or should have been considered in the ESOP Transaction.

76.     Due to the Plan's overpayment, the Plan's participants, whose losses are coterminous with the Plan's, received diminished stock allocations, saw their Plan take on excessive debt to finance the Transaction, and suffered losses to their individual Plan accounts.

77.     Horizon is liable to the Plan for the difference between the price paid by the Plan and the fair market value of PLM shares at the time of the ESOP Transaction.

78.     Selling Shareholders are liable to the Plan to repay the difference between the price they received and the fair market value of their PLM shares at the time of the ESOP Transaction.

79.     PLM, at a time that it was owned by Selling Shareholders, agreed to indemnify

Horizon in connection with the ESOP Transaction ("Indemnification Agreement"). The

Indemnification Agreement is something of value, potentially worth millions of dollars of

defense costs and/or liability in ERISA private company ESOP litigation.

80.     Plaintiffs further allege that the following factual allegations in this paragraph will

likely have evidentiary support after a reasonable opportunity for further investigation or

discovery. The Indemnification Agreement does not contain an exemption addressing violation

of the *per se* prohibited transaction rules under ERISA § 406, but only provides exemptions

where a court finds a loss was a result of negligence or intentional or willful misconduct, which

are not elements of a *per se* prohibited transaction violation. The Indemnification Agreement

does not require payment of interest or otherwise account for the time value of money should

Horizon ultimately be required to reimburse PLM.

81.     The Indemnification Agreement is invalid under ERISA § 410(a), 29 U.S.C.

§ 1110(a), as against public policy because Horizon violated its ERISA duties to the Plan, and its

legal defense and liability for the Plan's losses should not be paid by the company that the Plan

owns.

82.     Payment by PLM of millions of dollars of attorneys' fees, costs, litigation

expenses, losses, and liabilities to Horizon necessarily would adversely impact PLM's equity

value and therefore the value of Plan assets. Direct payment or reimbursement of Horizon's

attorneys' fees, costs, litigation expenses, losses, and liabilities by PLM, or the Plan that owns it,

would adversely affect the Plan and Plaintiffs' and other participants' financial interests.

## CLAIMS FOR RELIEF

## COUNT I

### Causing Prohibited Transactions Forbidden by
### ERISA § 406(a), 29 U.S.C. § 1106(a), Against Horizon

83.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

84.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here Horizon, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here PLM stock, with a party in interest, here Selling Shareholders, as took place in the ESOP Transaction.

85.     ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits Horizon from causing the Plan to borrow money from a party in interest, here PLM, as took place in the ESOP Transaction.

86.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits Horizon from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here Selling Shareholders, of any assets of the Plan, as took place in the ESOP Transaction with the direct or indirect transfer of Plan assets to Selling Shareholders as payment for PLM stock.

87.     The stock and loan transactions between the Plan and the parties in interest were authorized by Horizon in its capacity as Trustee for the Plan.

88.     Horizon caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

89.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the

plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

90.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief to a plan under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

91.     Horizon has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

## COUNT II

### Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a), Against Horizon

92.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

93.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan and defraying reasonable expenses of administering the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

94.     The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

95.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

96.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief to a plan under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

97.     Horizon was required to undertake an appropriate and independent investigation of the fair market value of PLM stock in or about June 2017 in order to fulfill its fiduciary duties, and an appropriate investigation would have revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the PLM stock purchased by the Plan.

98.     Horizon was required to act independently on behalf of the Plan, to probe projections and other information provided by PLM management, and it did not adequately do so.

99.     Horizon was required to negotiate for the Plan to pay no more than fair market value for PLM stock in the ESOP Transaction, and it failed to do so.

100.    Horizon breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

101.    Horizon has caused losses to the Plan by its breaches of fiduciary duty in an amount to be proved specifically at trial.

### COUNT III

**Violations of ERISA §§ 410 and 404(a)(1)(A), (B),
29 U.S.C. §§ 1110 and 1104(a)(1)(A), (B), Against Horizon**

102.    Plaintiffs incorporate the preceding paragraphs as though set forth fully herein.

103.     ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions

not applicable here) that "any provision in an agreement or instrument which purports to relieve

a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this

part [Part IV of Subtitle B of Title I of ERISA] shall be void as against public policy." As ERISA

§ 406 is under Part IV, any provision that attempts to relieve Horizon, a Plan fiduciary, of

responsibility or liability is void pursuant to ERISA § 410(a) unless there is an exception or

exemption. No such exception or exemption is applicable to the Count I claim here.

104.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a

fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or

duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the

plan any losses to the plan resulting from each such breach, and additionally is subject to such

other equitable or remedial relief as the court may deem appropriate.

105.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for

relief to a plan under ERISA § 409 and to obtain appropriate equitable relief to enforce the

provisions of Title I of ERISA or to enforce the terms of a plan.

106.     The indemnification agreement purports to provide payment or reimbursement for

the benefit of Horizon for its expenses, losses, costs, and damages, including but not limited to

attorneys' fees.

107.     To the extent that the indemnification agreement attempts to relieve Horizon of its

responsibility or liability to discharge its duties under ERISA, or attempts to have PLM (a Plan-

owned company) and thereby the Plan be responsible for Horizon's liability for breaches of the

statute, including but not limited to defense costs, such provisions are void as against public

policy.

108.   To the extent that any of the fiduciaries of the Plan would agree to the exercise of such a provision that is void against public policy under ERISA § 410, they breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B). *See also* ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

109.   As a result of the foregoing, should it be held liable under the preceding Count I, Horizon should be ordered to disgorge any indemnification payments made by PLM and/or the Plan, plus interest.

### COUNT IV

**Knowing Participation in ERISA Violations Pursuant to 29 U.S.C. § 1132(a)(3), Against Selling Shareholders**

110.   Plaintiffs incorporate the preceding paragraphs as though set forth herein.

111.   ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

112.   The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under ERISA § 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

113.     As a result of the prohibited stock transaction described above, Selling Shareholders received Plan assets in payments above fair market value for their PLM stock.

114.     Selling Shareholders were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as described above.

115.     Selling Shareholders knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase, directly or indirectly, of their PLM stock in the ESOP Transaction, (3) that Horizon was the fiduciary trustee to the Plan, (4) that they were PLM officers and directors or otherwise parties in interest to the Plan as 10% or more shareholders or as 360 Merchandising officers or directors or individuals with similar powers and responsibilities, and (5) that Horizon caused the Plan to engage in the prohibited stock transaction.

116.     As parties to the stock purchase agreement containing the terms of the Plan's stock purchase from Selling Shareholders and countersigned by Horizon on behalf of the Plan, as the sellers of $53 million in stock with an interest in having knowledge of and competently negotiating the Transaction, as officers and directors of PLM that chose Horizon to be the Plan Trustee and who led management that provided company financials and projections and other information to Horizon and its valuator for purposes of valuation and due diligence, and as officers and directors of PLM which participated in the loan component of the transaction under Selling Shareholders' authorization, Selling Shareholders were aware of sufficient facts that the ESOP Transaction constituted a prohibited transaction. Selling Shareholders are liable for knowingly participating in violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D), alleged in Count I.

117.     As a result of the ERISA § 404(a) breaches of fiduciary duty described above, Selling Shareholders received Plan assets in payments above fair market value for their PLM stock.

118.     Selling Shareholders knew or should have known that the Plan overpaid for PLM stock and that Horizon's investigation was inadequate. PLM was a party to the ESOP Transaction, provided company information to the buyer side, and appointed Horizon as fiduciary Trustee and thus had a duty to monitor. Selling Shareholders, as the senior PLM officers and as directors, knew or should have known facts regarding the scope of Horizon's due diligence, the information management provided to Horizon and its advisors, and company valuations, sufficient to give them knowledge of Horizon's fiduciary breaches. Selling Shareholders knew or should have known such facts as participants in the Transaction. They knew or should have known such facts because PLM could not give a $53 million loan without due diligence known to the director and officer Selling Shareholders and without their approval.

119.     Selling Shareholders are liable for the violations alleged in Count II.

120.     Selling Shareholders have profited from the prohibited stock transaction and breaches of fiduciary duty in an amount to be proven at trial, and upon information and belief, they remain in possession of some or all of the assets that belong to the Plan.

121.     Selling Shareholders are subject to appropriate equitable relief including disgorgement of any ill-gotten gains they received in connection with the ESOP Transaction, accounting for profits, having a constructive trust placed on any proceeds received (or which are traceable thereto), reformation of the ESOP Transaction contracts to provide the Plan pays no more than fair market value for PLM stock as of the date of the Transaction and to give the Plan powers or other consideration for which it paid but did not receive including control of PLM,

having the transaction rescinded, requiring all or part of the consideration to be restored to the

Plan, or to be subject to other appropriate equitable relief.

## CLASS ACTION ALLEGATIONS

122. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and

(b), on behalf of the following class:

> All vested participants in the P.L. Marketing, Inc. Employee Stock Ownership
> Plan ("Plan") and the beneficiaries of such participants as of the date of the June
> 6, 2017 ESOP Transaction or anytime thereafter. Excluded from the Class are the
> shareholders who sold their P.L. Marketing, Inc. ("PLM") stock to the Plan,
> directly or indirectly, and their immediate families; the directors and officers of
> PLM and their immediate families; and legal representatives, successors, and
> assigns of any such excluded persons.

123. The Class is so numerous that joinder of all members is impracticable. Although

the exact number and identities of Class members are unknown to Plaintiffs at this time, the

Plan's most recent Form 5500 filing reports that as of December 31, 2020, there were 1,964

participants in the Plan.

124. Questions of law and fact common to the Class as a whole include, but are not

limited to, the following:

> i. Whether Horizon served as Trustee in the Plan's acquisition of PLM
> stock;
>
> ii. Whether Horizon was an ERISA fiduciary of the Plan;
>
> iii. Whether Horizon caused the Plan to engage in prohibited transactions
> under ERISA by permitting the Plan to purchase PLM stock and take
> loans from parties in interest;
>
> iv. Whether Horizon engaged in good faith valuations of the PLM stock in
> connection with the ESOP Transaction;

v.     Whether Horizon caused the Plan to pay more than fair market value for PLM stock;

vi.    Whether Horizon breached its fiduciary duty to undertake an appropriate and independent investigation of the fair market value of PLM stock on or about June 6, 2017;

vii.   Whether PLM was a party in interest and gave a loan to the Plan;

viii.  Whether Selling Shareholders were parties in interest;

ix.    Whether Selling Shareholders knowingly participated in the prohibited stock transaction and breaches of fiduciary duty;

x.     The amount of losses suffered by the Plan and its participants as a result of Horizon's ERISA violations; and

xi.    The appropriate relief for Defendants' violations of ERISA.

125.   Plaintiffs' claims are typical of those of the Class. For example, Plaintiffs, like other Plan participants in the Class, suffered a diminution in the value of their Plan accounts because the Plan paid above fair market value and took on an excessive loan for PLM stock, resulting in them being allocated fewer shares of stock, and they continue to suffer such losses in the present because Horizon failed to correct the overpayment by the Plan.

126.   Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

127.   Class certification of Plaintiffs' Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party

Class members, and/or because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Horizon.

128.    The names and addresses of the Class members are available from the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants and for the following relief:

A.    Declare that Defendant Horizon caused the Plan to engage in prohibited transactions and thereby breached its duties under ERISA;

B.    Declare that Defendant Horizon breached its fiduciary duties under ERISA to the Plan and the class members;

C.    Declare that Selling Shareholders knowingly participated in a prohibited transaction with the Plan and Horizon's breaches of fiduciary duty in violation of ERISA;

D.    Order Defendants to make good to the Plan and/or to any successor trust(s) the losses resulting from the violations of ERISA and disgorge any profits they made through use of assets of the Plan;

E.    Order reformation of the ESOP Transaction contracts to provide the Plan pays no more than fair market value for PLM stock as of the date of the transaction, to provide the Plan receives that for which it paid including control of PLM where it paid a control premium or on a control basis for PLM but did not obtain control of the PLM board of directors under contractual governance provisions, and any other appropriate reformation;

27

F.    Order rescission of the ESOP Transaction;

G.    Order that Defendants provide other appropriate equitable relief to the Plan and its

participants and beneficiaries, including but not limited to surcharge by any

fiduciary defendant, providing an accounting for profits, and imposing a

constructive trust and/or equitable lien on any funds wrongfully held by

Defendants;

H.    Order the proceeds of any recovery for the Plan to be allocated to the accounts of

the class members to make them whole for any injury that they suffered as a result

of the breaches of ERISA in accordance with the Court's declaration;

I.    Order the allocation to the accounts of the class members of the additional shares

of stock that would have been allocated but for the Plan's overpayment on

company stock and Defendants' breaches of ERISA;

J.    Enjoin Horizon from acting as a fiduciary for any employee benefit plan that

covers or includes any PLM employees or members of the Class;

K.    Declare that the indemnification agreement between Defendant Horizon and PLM

violates ERISA § 410, 29 U.S.C. § 1110, and is therefore null and void;

L.    Order Defendant Horizon to reimburse PLM for any money paid by PLM under

any indemnification agreement between Horizon and PLM, plus interest;

M.    Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein

pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained

for the common fund;

N.     Enjoin Defendants from dissipating any of the proceeds they received from the Transaction held in their actual or constructive possession until the Plan participants' rights can be adjudicated;

O.     Enjoin Defendants from transferring or disposing of any of the proceeds they received from the Transaction to any person or entity, which would prejudice, frustrate, or impair the Plan participants' ability to recover the same;

P.     Order Defendants to pay prejudgment and post-judgment interest;

Q.     Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as class representatives and their counsel as class counsel; and

R.     Award such other and further relief as the Court deems equitable and just.

Dated:     October 5, 2022

Respectfully submitted,

**BAILEY & GLASSER LLP**

*/s/ Christina T. Natale*
Christina T. Natale
Gregory Y. Porter (*pro hac vice* to be filed)
Ryan T. Jenny (*pro hac vice* to be filed)
1055 Thomas Jefferson St., NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
cnatale@baileyglasser.com
gporter@baileyglasser.com
rjenny@baileyglasser.com

*Attorneys for Plaintiffs*