**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

| | | |
|---|---|---|
| Karen Merrow, et al., | **:** | |
| Plaintiffs, | **:** | NO.  2:22-CV-00123-DLB-CJS |
| v. | **:** | |
| | **:** | |
| | **:** | |
| Horizon Bank d/b/a Horizon Trust & Investment | **:** | |
| Management, et. al., | **:** | |
| Defendants. | **:** | |

<u>**MOTION TO DISMISS AMENDED COMPLAINT**</u>

Defendants Horizon Bank, Thomas Schuh and Timothy Logsdon, by and through their respective counsel, hereby jointly move to dismiss the Amended Complaint [DN 22] in this matter in its entirety for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), as well as 9 U.S.C. §§ 3-4, due to the existence of a binding individual arbitration agreement and Plaintiffs' failure to allege an injury-in-fact, as required for Article III standing.

## I.     INTRODUCTION

More than five years after an employee stock ownership plan ("ESOP") purchased shares of P.L. Marketing, Inc. ("PLM" or the "Company"), Plaintiffs attempt to challenge the purchase price paid by the ESOP for the Company stock by alleging speculative and conclusory "facts" that are either improperly asserted upon "their counsel's knowledge and experience in ESOPs and the practices of ESOP trustees and their advisors," or "upon information and belief" that "evidentiary support will exist after a reasonable opportunity for further investigation and discovery." But the Court does not have subject matter jurisdiction to adjudicate Plaintiffs' claims.

First, Plaintiffs can only proceed with individual, non-class arbitration as required by the ESOP's mandatory arbitration clause. The Sixth Circuit has recognized that mandatory arbitration provisions in ERISA plans, like the one in the ESOP here, are enforceable and preclude jurisdiction

over covered claims. *Simon v. Pfizer Inc.*, 398 F.3d 765, 773 (6th Cir. 2005).  Likewise, an agreement limiting arbitration to individual claims and precluding classwide relief is valid and must be enforced as part of the threshold decision to compel arbitration.  *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013).  The Court should enforce the ESOP's arbitration clause, and direct that Plaintiffs may only pursue their claims through individual arbitration, and not in a federal court class action.   9 U.S.C. §§ 3-4.

Second, even if this dispute were not required to be arbitrated, the Court lacks subject matter jurisdiction for another reason: the Amended Complaint's speculative and conclusory allegations do not satisfy Article III's injury-in-fact requirement. This result should not be surprising to Plaintiffs: the original Complaint asserted the *same* conclusory and insufficient facts that were alleged by the *same* lawyers in another case about a different ESOP transaction, which was properly dismissed for lack of Article III standing. *Plutzer v. Bankers Tr. Co. of S.D.*, 2022 WL 17086483 (2d. Cir. Nov. 21, 2022). Following Defendants' Motion to Dismiss the original Complaint, Plaintiffs have repackaged their allegations in an Amended Complaint to make the repetitiveness of their conclusory assertions less obvious. But the repackaged allegations in the Amended Complaint fare no better than the conclusory *Plutzer* allegations that did not satisfy Article III. This Court does not have subject matter jurisdiction to hear this case, and it should be dismissed.

## II.    STATEMENT OF FACTS

### *The Transaction*

This lawsuit concerns a transaction involving an employee stock ownership plan, or "ESOP." "An ESOP is a form of employee benefit plan designed to invest primarily in securities issued by its sponsoring company." *Donovan v. Cunningham*, 716 F.2d 1455, 1458 (5th Cir. 1983)

(citing 29 U.S.C. § 1107(d)(6) (1976)). To promote employee ownership, Congress enacted a series of tax benefits relating to the leveraged stock purchase transactions that make many ESOPs possible. *See, e.g.*, 26 U.S.C. § 404 (allowing a company to deduct its contributions to the ESOP, which the ESOP uses to pay for the shares purchased).

In a typical ESOP transaction, the sponsoring company establishes an ESOP. An independent trustee, or fiduciary, is typically appointed to represent the ESOP's sole interests throughout the transaction, including determining that the ESOP paid no more than fair market value for the asset. *Keach v. U.S. Tr. Co.*, 419 F.3d 626, 636 (7th Cir. 2005) (citing *Eyler v. Comm'r of Internal Revenue,* 88 F.3d 445, 454-55 (7th Cir.1996)). The ESOP – which, having just been established, has no assets of its own – finances the acquisition using debt guaranteed by the sponsoring company, and repays the debt with the contributions received from the company.

An ESOP is a defined contribution retirement plan. Each participant in the ESOP – an eligible employee of the company – is individually allocated a portion of the ESOP's stock holdings in an individual account.  Amended Compl., ¶ 32; ESOP, § 4 (attached as Exh. A).  The value of the benefit to which each participant is entitled is based on the value of the stock allocated to their particular account.

Here, the ESOP engaged Defendant Horizon Bank to act as trustee, and the Amended Complaint asserts that in 2017 the ESOP paid $53 million for 100% of the Company's shares, which was financed by a loan from the Company for the entire amount. Amended Compl., ¶ 5. The gravamen of Plaintiffs' allegations is that shares were overvalued when purchased in 2017 by the ESOP, which caused Plaintiffs undefined harm. But the original Complaint also asserted that after the transaction the shares were valued at more than $87 million in 2019, and more than $63 million in 2020 – more than the transaction value more than three years after the transaction.

Compl., ¶ 74.  The Amended Complaint deleted those allegations, but the Court can take judicial notice of them because they are taken from the PLM ESOP's "Form 5500 – Annual Return/Report of Employee Benefit Plan" filings with the U.S. Department of Labor – which are publicly available on the DOL's web site.[1]

***The Arbitration Provision***

From its inception, the ESOP has contained a provision comprehensively requiring arbitration of all claims by participants related to the ESOP or its administration.  Specifically, Section 7.6 provides, in relevant part:

> <u>Mandatory Arbitration; Waiver of Rights</u>.  In exchange for participation in this Plan, each Claimant agrees to arbitrate and be bound by the final and binding arbitration result of ***any dispute, claim or controversy arising hereunder***, but only if and after it is denied in whole or in part pursuant to the claims process set forth in Sections 7.1-7.5 above.  For avoidance of doubt, even if and to the extent that a Claimant believes a claim is not subject to such administrative claims process under applicable law, ***the arbitration provisions in this Section shall be the sole and exclusive means for adjudicating such claims***. Each Claimant, whether pursuing a claim for benefits or other relief on behalf of the Plan as a whole, by participating in this Plan, is specifically waiving the right it otherwise would have had to sue the Company, Trustee, the Administrator or any party to whom administration or investment discretion is delegated hereunder in court and to have such claims decided by a judge or jury.

ESOP § 7.6 (Exh. A) (emphasis added).

Moreover, the ESOP's dispute resolution provisions contain an express prohibition of class arbitration:

> <u>No Class Arbitration or Class Relief</u>.  Each Participant and Beneficiary, or any party claiming for or through them, agrees that any Claims will be arbitrated individually and shall not be brought, heard, or arbitrated on a class or collective action basis – unless both parties agree, in writing, to the contrary.

---

[1] Any company's Form 5500 filings for its ERISA benefit plans can be found at https://www.efast.dol.gov/5500search/. The PLM ESOP's yearly Form 5500 filings are found under the Plan Name "P.L. Marketing, Inc. Employee Stock Ownership Plan."

*Id.*, § 7.7(f).  Section 7.8 further states that this waiver of classwide arbitration is "not severable from this arbitration agreement." *Id.*, § 7.8.

***Plaintiffs' Allegations***

Plaintiffs, who are all participants in the ESOP by virtue of their employment with PLM, assert claims challenging the trustee's acquisition of PLM stock in 2017.  Plaintiffs seek to bring claims on their own behalf, as well as on behalf of a putative class of all vested participants in the ESOP, who Plaintiffs allege also "suffered a diminution in the value of their Plan accounts" due to the alleged overpayment for PLM stock.  Amended Compl., ¶ 122.

The original Complaint asserted that the ESOP improperly paid for control, used "optimistic" projections in its assessment of the Company's future performance, allegedly failed to conduct significant due diligence, and other similar allegations, *Compl.*, ¶¶ 67, 68, 70, but also alleged that the value of the ESOP's shares *increased* after the transaction.  *Id.*, ¶ 74.

These were the same allegations – indeed, essentially verbatim – that the same lawyers asserted against a different ESOP trustee in *Plutzer v. Bankers Trust Company of South Dakota*, 2022 WL 17086483 (2d. Cir. Nov. 21, 2022), in which both the Southern District of New York and Second Circuit held the allegations failed to plausibly allege an injury-in-fact sufficient to establish Article III standing. The complaint in *Plutzer* is attached as Exhibit B to this Motion, and the Court can take judicial notice of this publicly-filed court document.

Plaintiffs' allegations in *Plutzer* and in the original Complaint purported to allege "facts" made "upon" "on" or "under" "information and belief" in support of their assertion that a violation of ERISA occurred. *E.g.*, Compl., ¶¶ 67, 71, 120. But after Defendants highlighted the obvious deficiencies in these allegations as identified by the Courts in *Plutzer*, Plaintiffs deleted the most obviously repetitive allegations, as well as deleting the specific references within the numbered

allegations to assertions upon "information and belief" or that will "likely have evidentiary support."

For example, Plaintiffs' allegations regarding control, at paragraph 57 of the original Complaint, were rewritten at paragraphs 59-60 of the Amended Complaint to make similar allegations – but now without the qualifier that the allegations "will likely have evidentiary support." *Compare* Compl., ¶ 57 *with* Amended Compl., ¶¶ 59-60. And other allegations were simply repeated in the Amended Complaint but without reference to the "likely to have evidentiary support" qualifier in the paragraph at issue. *Compare* Compl. ¶ 62 (asserting upon information and belief that allegations regarding the size and number of PLM's teams were decreased prior to the ESOP Transaction "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery") *with* Amended Compl., ¶ 64 (reasserting the same allegations as contained in ¶ 62 of the Complaint, but now without the "will likely have evidentiary support" qualification that preceded the assertions in the original Complaint).

Instead of denoting in each paragraph the allegations that are speculative, the Amended Complaint relies on the text of the introductory paragraph that purports to provide one of four potential bases for its allegations: 1) "personal knowledge," 2) the "investigation of their counsel," 3) their "counsel's knowledge and experience in ESOPs and the practices of ESOP trustees and their advisors," or 4) "upon information and belief as to all other matters, as to which allegations they believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery." Amended Compl., p.1. The Court therefore cannot rely on the new and rewritten allegations in the Amended Complaint as plausibly alleging any harm to satisfy Article III, because it is not possible for the reader to determine which allegations may be based upon personal knowledge, or which allegations are asserted solely upon "information and belief"

or based upon their lawyers' speculation after Plaintiffs' revisions.

A comparison of the *Plutzer* complaint to the original Complaint and the Amended Complaint is attached as Exhibit C as a demonstrative exhibit. A short summary of the chart attached as Exhibit C shows the paragraphs in the *Plutzer* complaint that have been recycled here:

| Same Allegations Asserted Re: | *Plutzer* (BTC) | Original Complaint (Horizon) | Amended Complaint (Horizon) |
|---|---|---|---|
| Control | ¶ 61 | ¶ 57 | ¶¶ 59-60 |
| "Optimistic Projections" | ¶ 63 | ¶ 67 | ¶ 61 |
| Value of the ESOP after the Transaction | ¶¶ 64-66 | ¶ 74 | Deleted from Amended Complaint |
| Due Diligence | ¶ 67 | ¶ 70 | ¶ 73 |
| Allegations of Conflict | ¶ 68 | ¶ 71 | ¶ 47 |

Plaintiffs' recycled Complaint should fare no better here than in *Plutzer*. It simply asserts speculative, conclusory assertions that are insufficient to demonstrate Article III standing. Nor does it articulate any basis to avoid the ESOP's provision requiring mandatory non-class, individual arbitration. Subject matter jurisdiction is therefore lacking, and Plaintiffs' Amended Complaint should be dismissed.

## III.    LAW AND ARGUMENT

### A.  Plaintiffs' claims should be dismissed because they are subject to mandatory individual arbitration.

The Court should dismiss this case under Rule 12(b)(1), because Plaintiffs can only

proceed with individual, non-class arbitration pursuant to Sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4. *Simon v. Pfizer Inc.*, 398 F.3d 765, 773 (6th Cir. 2005) ("[A] compulsory arbitration provision divests the District Court of jurisdiction over claims that seek benefits under an ERISA plan….").[2] Plaintiffs' claims all fall within the ESOP's broad mandatory arbitration clause, requiring arbitration of "any dispute, claim or controversy arising hereunder," ESOP § 7.6, as well as Section 7.7(f)'s requirement that there be "No Class Arbitration or Class Relief," and that "any Claims will be arbitrated individually and shall not be brought, heard, or arbitrated on a class or collective action basis – unless both parties agree, in writing, to the contrary."   The Court should enforce this provision, and direct that any claims by Plaintiffs may only be pursued via individual arbitration.

In considering a motion to compel arbitration, the Court's inquiry is limited to "only narrow issues … relating to the making and performance of the agreement to arbitrate." *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 837 (6th Cir. 2021). The Court is not limited to the allegations of the pleadings, but if there is no factual dispute relating to the making of an agreement to arbitrate, and the dispute is covered by such an agreement, the Court must compel arbitration according to the agreement's terms. *Id.*  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3, 4).

Any disputes concerning the validity or scope of an agreement to arbitrate, moreover,

---

[2] The Court may also, alternatively, compel arbitration under the authority conferred directly by Sections 3 and 4 of the FAA. *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 837 (6th Cir. 2021).

should be resolved with due consideration for the FAA's strong federal policy "to ensure that private agreements to arbitrate are enforced according to their terms." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quotations omitted).  *See also Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.,* 350 F.3d 568, 573 (6th Cir. 2003); *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). The FAA reflects Congress's "preeminent concern" with the "enforce[ment] [of] private agreements into which parties . . . enter[]," and "that concern requires [courts to] rigorously enforce agreements to arbitrate."  *Dean Witter*, 470 U.S. at 221.

Applying these standards, individual arbitration is required here.  The ESOP's arbitration clause is valid and enforceable, Plaintiffs' claims fall within its scope, and the clause contains an express waiver of classwide arbitration, which the Supreme Court has repeatedly upheld. Defendants' motion to dismiss and compel arbitration should be granted.

### i.    The ESOP's arbitration clause is valid and binding on the parties.

The Sixth Circuit has "upheld the validity of mandatory arbitration clauses in ERISA plans," like the one in the ESOP here.  *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 932 (6th Cir. 2014) (citing *Simon v. Pfizer Inc*. 398 F.3d 765, 773 (6th Cir. 2005) (compelling plan participant to arbitrate covered claims pursuant to arbitration clause in ERISA plan)).  Other courts have held the same.  *E.g*., *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. 2019); *Vanvels v. Betten*, 2007 WL 329048, at *4 (W.D. Mich. Jan. 31, 2007) ("[I]f the plan has agreed to arbitrate its disputes with a fiduciary, then in order to give effect to the FAA and the national policy favoring arbitration, a participant or beneficiary suing on behalf of the plan must do so subject to the arbitration agreement."); *Best v. James*, Slip Op., 2023 WL 145007 (E.D. Ky. Jan. 10, 2023); *Holmes v. Baptist Health S. Fla., Inc*., 2022 WL 180638 (S.D. Fla. Jan. 20, 2022).

9

Accordingly, where, as here, a participant brings a claim arising from an ERISA plan, the terms of any arbitration agreement in that same plan should be strictly enforced.

The Ninth Circuit's recent decision in *Dorman* is particularly illustrative. 780 F. App'x 510. In *Dorman*, as in this case, participants in an ESOP brought a putative class action alleging breach of fiduciary duty related to alleged overpayment by the ESOP for company stock. As here, the ESOP contained a broad mandatory arbitration clause, and a provision that arbitration be conducted on an individual, non-class basis. The court explained, "[a] plan participant agrees to be bound by a[n arbitration] provision in the plan when he participates in the plan while the provision is in effect." *Id*. at 512. Moreover, because fiduciary breach claims under ERISA § 502(a)(2) provide for relief directly to the plan, even when limited to an individual plaintiff's account value, the court observed that "[t]he relevant question is whether the Plan agreed to arbitrate," and "[h]ere, the Plan expressly agreed in the Plan document that all ERISA claims should be arbitrated." *Id*. at 513. Thus, because "the Plan and Dorman both agreed to arbitrate on an individualized basis," the court enforced the arbitration clause according to its terms and directed "the district court to order arbitration of individual claims limited to seeking relief for the impaired value of the plan assets in the individual's own accounts resulting from the alleged fiduciary breaches." *Id*. at 514.

The Western District of Kentucky reached a similar result in its recent decision in *Best*, 2023 WL 145007, which likewise involved an ESOP class action. There, as here, the ESOP itself contained an arbitration clause requiring individual, non-class arbitration. The court held under Sixth Circuit precedent, "the Court finds the ESOP Amended Agreement sufficient to bind the plan to arbitration," and "[u]nder this agreement, Plaintiffs must arbitrate their claims" on an individual basis. *Id*. at *4 (citing *Hawkins v. Cintas Corp*., 32 F.4th 625, 631 (6th Cir. 2022)).

The same is true here.  As in *Dorman*, Plaintiffs claim breach of fiduciary duty for alleged overpayment for company stock by an ESOP trustee.  The Sixth Circuit, like the Ninth, has recognized that such claims inure immediately to the plan, even when the claims are limited to the value an individual participant's account.  *Hawkins*, 32 F.4[th] at 631 (citing *Munro v. Univ. of S. Cal.*, 896 F.3d 1088 (9th Cir 2018)).  *See also Dorman*, 780 F. App'x at 513 (citing *Munro*).  So the plan's assent to arbitration in the ESOP's arbitration clause requires arbitration of these claims.

Additionally, the Plaintiffs' participation and claimed entitlement to benefits under the plan constitutes agreement to the terms of the plan, including the plan's arbitration clause, and Plaintiffs are bound to arbitrate for that reason as well.  *Simon*, 398 F.3d at 773.[3]

From its inception, the ESOP has required that any and all disputes arising from the plan must be submitted to mandatory individual arbitration.  Plaintiffs have at all times participated in the ESOP subject to the terms and conditions of the plan, and thus their claims related to purchases made by the ESOP – and the value of the benefits to which participants are entitled under the ESOP – are subject to the ESOP's requirement for mandatory individual arbitration.[4]

---

[3] Kentucky law similarly recognizes that under estoppel principles, individuals "may not [choose] to accept the benefit of the contracts while simultaneously avoiding the dispute resolution mechanism set out in those same contracts."  *Olshan Found. Repair and Waterproofing v. Otto*, 276 S.W.3d 827, 831-32 (Ky. App. 2009).  *See also Household Fin. Corp. v. King*, 2010 WL 3928070, at *3 (Ky. App. Oct. 8. 2010).  Here, the relief Plaintiffs seek is to enlarge the value of the benefits they are entitled to receive under the ESOP, and thus they cannot disavow the ESOP's arbitration provision.  Similarly, Plaintiffs may be bound under third-party beneficiary principles, as they are intended beneficiaries of the ESOP.  *See N. Fork Collieries, LLC v. Hall,* 322 S.W.3d 98, 106 (Ky. 2010).

[4] Plaintiffs' obligation to arbitrate encompasses all of their claims against all defendants in this action.  Plaintiffs' claims against Schuh and Logsdon are entirely derivative of their § 502(a)(2) claim against Horizon, which is a party to the ESOP document.  As *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), makes clear, claims against a nonfiduciary to recover trust property are merely an additional *remedy* for breach by the trustee/fiduciary, not a distinct claim for breach of any legal duty imposed on the nonfiduciary parties under ERISA.  Also, Kentucky courts have recognized that where a party "alleges substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract," all claims are subject to arbitration.  *King*, 2010 WL 3928070, at *4 (quotation omitted).  *See also Palazzo v. Fifth Third Bank*, 2012 WL 3552633, at *3 (Ky. App. Aug. 17, 2022) (for claims of concerted misconduct, "related entities …. stand in each other's shoes with regard to

>    ii.   **Plaintiffs' claims are within the scope of the plan's arbitration clause.**

Nor is there any doubt that Plaintiffs' claims fall within the scope of the plan's arbitration clause.  The ESOP requires arbitration of "any dispute, claim or controversy arising hereunder." ESOP § 7.6.  The Sixth Circuit has consistently interpreted such broad references to arbitration of "any disputes" "arising" from an agreement to be virtually all encompassing.  *E.g.*, *Highlands Wellmont*, 350 F.3d at 577; *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004). Indeed, when faced with such broad language, "only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators."  *Masco*, 382 F.3d at 627.

Plaintiffs' claims here plainly arise under the ESOP.  Indeed, Plaintiffs' claims for benefits are entirely dependent on the ESOP.  Without the plan, they would have no entitlement to any of the Company stock, and no interest or stake in the consideration paid for that stock.  *See Dorman*, 780 F. App'x 510 (fiduciary breach claims for alleged overpayment by ESOP subject to plan's arbitration clause); *Best*, 2023 WL 145007, at *4 (same).

The fact that Plaintiffs' claims relate to federal statutory duties imposed by ERISA does not in any way preclude arbitration of those claims.  The Supreme Court has repeatedly emphasized that agreements to arbitrate claims alleging a violation of a federal statute must be enforced like

---

the arbitration agreement").  Kentucky courts also recognize nonsignatories are entitled to the benefit of arbitration under estoppel principles where plaintiffs are seeking benefits from the agreement, or their claims "make[] reference to or presume[] the existence of" the agreement, which is the case here.  *King*, 2010 WL 3928070, at *4 (quotation omitted).  Thus, both the plan and the Plaintiffs are estopped from refusing to arbitrate claims against Schuh and Logsdon. Schuh and Logsdon are further entitled to benefit from the clause under agency principles, as officers of the ESOP's sponsoring and adopting employer. *Olshan*, 276 S.W.3d at 831.  Moreover, Schuh signed the ESOP document on behalf of the sponsoring and adopting employers.  Schuh and Logsdon are also entitled to arbitration as third-party beneficiaries of the arbitration agreement with respect to claims arising from their transacting with Horizon.  *See N. Fork Collieries*, 322 S.W.3d at 106.

any other arbitration agreement absent a "contrary congressional command." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). Every Circuit to consider whether ERISA claims fall under this rubric has concluded that nothing in ERISA evinces a congressional intent to preclude arbitration of ERISA claims. *See, e.g.*, *Simon*, 398 F.3d at 774 (although Sixth Circuit had not squarely addressed the issue, "the majority of courts considering this issue have held that disputes arising under ERISA … are subject to arbitration under the FAA"); *Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir. 2000) ("Congress did not intend to prohibit arbitration of ERISA claims.").[5]

Nor is this analysis in any way affected by Plaintiffs' inclusion in the Amended Complaint of a new claim for a declaration that the ESOP arbitration clause is unenforceable. Amended Compl., Count IV. The Court, of course, will need to determine the validity of the individual arbitration agreement as a threshold question to enforcing the arbitration clause. *See* pp. 8-9, 14. As explained below, the arbitration clause does not prospectively waive, or prevent effective vindication of any statutory rights, so there is no basis for Plaintiffs' challenge to the enforceability of the arbitration clause. *See* pp. 16-17, *infra*. The formality of pleading a separate claim related to the enforceability of the arbitration clause cannot change the substantive effect of the clause, or the procedure for compelling arbitration.[6]

### iii.   The Court should enforce the ESOP's waiver of classwide arbitration.

The ESOP's arbitration clause also makes clear that arbitration must be conducted on an

---

[5] *See also, e.g.*, *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996) ("We agree that Congress did not intend to exempt statutory ERISA claims from the dictates of the Arbitration Act."); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1118 (3d Cir. 1993) (same); *Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116, 122 (2d Cir. 1991) (same); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 479 (8th Cir. 1988) (same).

[6] To the extent relevant or necessary to give full effect to the arbitration clause, the Court should also dismiss this claim pursuant to FED. R. CIV. PRO. 12(b)6).

individual, non-class basis. *See Dorman*, 780 F. App'x 510. Section 7.7(f) unequivocally requires that "any Claims will be arbitrated individually, and shall not be brought, heard, or arbitrated on a class or collective action basis," absent written consent. ESOP, § 7.7(f). The Supreme Court has repeatedly directed that such limitations on classwide arbitration must be enforced, consistent with the FAA's command that arbitration clauses be enforced according to their terms. *Italian Colors*, 570 U.S. at 233; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). This is true, even for claims asserted under federal statutes that expressly provide the option of pursuing collective remedies. *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612 (2018) (enforcing individual arbitration clause against plaintiffs asserting collective action claims authorized under Fair Labor Standards Act ("FLSA")). The Court should enforce the ESOP's arbitration clause as written, and compel individual arbitration.

"[T]he question whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved for judicial determination unless the parties clearly and unmistakably provide otherwise." *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) (quotation omitted). *See also Huffman v. Hilltop Cos.*, 747 F.3d 391, 398-99 (6th Cir. 2014). Thus, the availability of classwide arbitration must be decided by the Court as part of the threshold decision whether to compel arbitration at all.

That is because the Supreme Court has "characterized the differences between bilateral and classwide arbitration as 'fundamental,'" such that it cannot be presumed that any party agreed to classwide arbitration, or agreed to leave such an issue to an arbitrator, absent a clear indication to the contrary. *Reed Elsevier,* 734 F.3d at 598. "[C]lass arbitration sacrifices the principal advantage of arbitration – its informality – and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Concepcion*, 563 U.S. at 348. Classwide

arbitration vastly increases the stakes and risks to defendants, while at the same time "[t]he absence of multilayered review makes it more likely that errors will go uncorrected." *Id*. at 350. Classwide arbitration also presents serious due process concerns about allowing an individual litigant to control the claims of absent class members and about a private arbitrator's authority to make binding adjudications about the rights or interests of such non-party class members. *Reed Elsevier*, 734 F.3d at 598 (citing *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2071-72 (Alito, J., concurring)).

In light of these concerns, the Supreme Court has squarely held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen*, 559 U.S. at 684 (italics in original). *See also Concepcion*, 583 U.S. at 348 (holding "class arbitration, to the extent it is manufactured by [judicial rule] rather than consensual, is inconsistent with the FAA"). "An agreement must expressly include the possibility of classwide arbitration for us to conclude that the parties agreed to it," and where an "arbitration clause is silent on the availability of classwide arbitration, [] we may not presume from 'mere silence' that the parties consented to it." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 553 (6th Cir. 2016).

Here, the arbitration clause clearly does not authorize class arbitration. Far from being silent, the clause expressly states there will be "No Class Arbitration or Class Relief" and that "any Claims will be arbitrated individually and shall not be brought, heard, or arbitrated on a class or collective action basis," absent written agreement. ESOP, § 7.7(f). The Supreme Court has repeatedly upheld this type of class waiver. *See Concepcion*, 563 U.S. at 352; *Italian Colors*, 570 U.S. at 238.

The *Dorman* case is again illustrative. 780 Fed. App'x at 514. *Dorman* enforced a similar

clause barring class arbitration in an ESOP, where the plaintiffs asserted ERISA fiduciary breach claims related to alleged overpayment for company stock.  The court reasoned that "[b]ecause arbitration is a matter of contract, the Provision's waiver of class-wide and collective arbitration must be enforced according to its terms, and the arbitration must be conducted on an individualized basis." *Id*. at 514 (citing *Italian Colors*, 570 U.S. at 233).  Thus, the court remanded to the district court with orders to compel arbitration limited to claims related to the impairment of the plan assets in the individual plaintiff's own account.  *Id*.

Likewise, in *Best*, the Western District of Kentucky enforced a "no class arbitration" provision contained in an ESOP, noting "class action waivers are enforceable in the arbitration context" and therefore "Plaintiffs may not arbitrate their claims against Defendants on a class basis." *Best*, 2023 WL 145007, at *5.

Enforcing the ESOP's individual arbitration clause does not operate as a prospective waiver, or preclude effective vindication, of Plaintiffs' statutory claims.  (*Cf.* Amended Compl., ¶ 117).  As the U.S. Supreme Court recognized in *LaRue v. DeWolff, Boberg, & Assocs*., 552 U.S. 248 (2008), participants in defined contribution plans like the ESOP here – where each participant has a discrete share of the plan assets assigned to their individual account – can bring claims under § 502(a)(2) of ERISA to recover impairment to the value of their individual accounts.  *See Dorman*, 780 Fed. Appx. at 514 ("*LaRue* stands for the proposition that a defined contribution plan participant can bring a § 502(a)(2) claim for the plan losses in her own individual account.").  The individual arbitration clause does not preclude Plaintiffs from vindicating any statutory rights conferred on the Plaintiffs under ERISA.  It merely precludes them using the procedural device of class arbitration to seek recovery for the individual accounts of other participants who are not parties to this action.

The mere fact that it may be less financially lucrative to pursue such claims individually, rather than on behalf of all plan participants, does not justify disregarding an individual arbitration provision. *Italian Colors*, 570 U.S. at 236 (enforcing class arbitration waiver in antitrust class action, despite argument that individual litigation was not economically feasible, noting "the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy") (italics in original). Indeed, even in the context of federal statutes that expressly provide for collective action remedies, like the FLSA, the Supreme Court has enforced no-class-arbitration clauses because the plaintiff still retained the right to assert their statutory rights on an individual basis. *Epic Sys.*, 138 S. Ct. at 1627 ("[E]ven a statute's express provision for collective legal actions does not necessarily mean that it precludes 'individual attempts at conciliation' through arbitration.").

Accordingly, the Court should grant Defendants' motion and order the parties to proceed to individual arbitration, limited to any claims for impairment to the value of the individual Plaintiffs' accounts. The ESOP does not authorize classwide arbitration, and in fact prohibits it, so there is no basis to compel Defendants to submit to arbitration concerning the broader question of compensation owed to all plan participants, nor to bind non-party plan participants to the private arbitral adjudication of the claims asserted by these individual Plaintiffs.

**B. Plaintiffs' recycled Amended Complaint should be dismissed under Rule 12(b)(1) for lack of Article III standing because it does not allege any concrete, particularized and actual injury.**

   **i.  US Supreme Court and Sixth Circuit precedent is clear: Plaintiffs must independently establish Article III standing in a complaint alleging ERISA violations.**

A separate basis for dismissal under Rule 12(b)(1) is also present in this case – Plaintiffs do not have standing under Article III to assert their claims. Because federal courts are courts of

limited jurisdiction and "'have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto,' a plaintiff must satisfy statutory and constitutional standing requirements in order for a federal court to have jurisdiction." *Loren v. Blue Cross & Blue Shield*, 505 F.3d 598, 606 (6th Cir. 2007) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). Even where ERISA's statutory standing requirements are satisfied, "[i]f Plaintiffs cannot establish constitutional standing, their claims must be dismissed for lack of subject matter jurisdiction." *Id.* at 607. "There is no ERISA exception to Article III." *Gragg v. UPS Pension Plan*, 55 F.4th 1059, at *2 (6th Cir. 2022) (*quoting Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020)). "Article III standing requires a concrete injury even in the context of a statutory violation," and "a plaintiff [does not] automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

"To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole*, 140 S.Ct. at 1618. And "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).

### ii.   Allegations satisfying standing must be plausible, and not rest solely on conclusory allegations of injury.

At the pleading stage, that burden requires "plaintiffs to clearly allege facts that demonstrate each element of standing." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020) (citing *Spokeo*, 578 U.S. at 338). Plaintiffs must set forth plausible facts

18

that the Court can properly rely upon when considering whether each element of standing has been satisfied.

But the Court cannot do that here – because it cannot properly rely upon allegations in an Amended Complaint that were originally identified as being asserted upon information and belief, but now rest upon an unclear foundation – one of four potential bases set forth in the introduction. Plaintiffs now try to improperly suggest that the allegations could be based upon personal knowledge, but the assertions are likely still based only upon the speculation of their lawyers, or some other insufficient basis. Prior allegations in a complaint that are removed from subsequent pleadings constitute admissions against interest of the plaintiffs. *United States v. Avanir Pharms., Inc.*, 2020 WL 4339339, at *5 (N.D. Ohio July 28, 2020) ("allegations in the original complaint and in the first amended complaint that are removed from the second amended complaint constitute admissions against interest…") (*citing Pennsylvania R.R. v. City of Girard*, 210 F.2d 437, 440 (6th Cir. 1954) (noting that "pleadings withdrawn or superseded by amended pleadings are admissions against the pleader in the action in which they were filed").

Courts in this Circuit routinely dismiss complaints where a plaintiff cannot demonstrate a concrete injury. *See, e.g., Soehnlen v. Fleet Owners Insurance Fund*, 844 F.3d 576 (6th Cir. 2016) (holding that plan participants did not have Article III standing to assert ERISA claims against plan fiduciaries); *Loren*, 505 F.3d at 608-09 (holding that the plaintiffs did not have Article III standing to assert claims under ERISA Section 1132(a)(2)). And even when accepting allegations made "upon information and belief," Courts routinely dismiss claims when the allegations do not contain facts that support the conclusions stated. *Floyd v. Buffalo Trace Distillery, Inc.*, 2021 WL 1113143, at *3 (E.D. Ky. Mar. 23, 2021); *Ackison Surveying, LLC v. Focus Fiber Solutions, LLC*, 2017 WL 958620, at *3 (S.D. Ohio March 13, 2017).

Plaintiffs' Amended Complaint fails these pleading requirements. The Amended Complaint does not assert sufficient plausible allegations that can be properly relied upon by the Court. And the "facts" asserted do not adequately set forth allegations of injury in fact under Article III that are not purely speculative and conclusory. Like the Courts in *Plutzer*, this Court should dismiss the Amended Complaint for lack of Article III standing.

### iii. The Amended Complaint fails to allege sufficient facts that satisfy Article III standing.

None of the allegations contained in the Amended Complaint satisfy the requirement that an injury in fact has occurred that is concrete, particularized, and actual. Instead, like in *Plutzer*, the vague, conclusory allegations confirm that dismissal for lack of jurisdiction is required.

### a. The post-transaction ESOP share values were deleted in the Amended Complaint because they show that the transaction did not cause any injury in fact

Plaintiffs alleged in the original Complaint that the value of the ESOP's shares that were purchased in 2017 for $53 million were later worth $87,140,000 in 2019 and $63,460,000 in 2020. Compl., ¶74. *Plutzer* contained substantially similar allegations. *Plutzer* Compl., ¶¶ 64-66; *Plutzer*, 2022 WL 17086483, at *2. Such allegations "lend no factual support" to Plaintiffs' theory of injury in this case because there is simply "no reasonable inference to be drawn from those rises and falls" in share value. *Plutzer,* 2022 WL 17086483, at *2.

Nor could there be as a matter of law, because any equity value immediately after the purchase of 100% of the company's shares demonstrates the ESOP received a discount, rather than overpaying. *Lee v. Argent Trust Co.*, 2019 WL 3729721, at *3-4 (E.D.N.C. Aug. 7, 2019). In *Lee*, the plaintiff asserted that the ESOP had overpaid for shares of a company in a leveraged ESOP transaction, and pointed to the decline in value after the transaction as factual support for that position. But the Court correctly rejected that argument, concluding that any residual equity value

immediately following the transaction demonstrated that the ESOP received a discount. *Id.* Because there were no facts that established any injury, the *Lee* court dismissed the case for lack of any concrete and particularized injury to satisfy Article III. *Id.* at *4.

Here, Plaintiffs have deleted the allegations in the original Complaint regarding the subsequent values, recognizing that the increases in value contradict their assertion that there was any cognizable injury as required under Article III. That deletion is an admission against interest that the facts as originally alleged justify dismissal for lack of any injury. But the values are also found in the ESOP's publicly-available 5500 reports; the Court can take judicial notice of the subsequent values when assessing the plausibility of Plaintiffs' allegations. These values, like in *Plutzer* and *Lee*, demonstrate that there is no injury suffered by Plaintiffs as a matter of law.

### b. The "control" allegations are insufficient to provide Article III standing.

Plaintiffs assert that the ESOP paid a "control premium" that was unwarranted because the ESOP did not actually obtain control of the Company. Amended Compl., ¶¶ 59-60. But that factual allegation "does not allege any facts suggesting that the Plan actually paid a control premium; all he actually alleges is that the Plan did not obtain control." *Plutzer,* 2022 WL 17086483, at *2; *compare* Amended Compl., ¶¶ 59-60 *with* Plutzer Compl., ¶ 61. Paragraphs 59-60 of the Amended Complaint are "little more than a rephrasing of [the] conclusory allegation that the Plan overpaid for the company." *Plutzer,* 2022 WL 17086483, at *2. Those conclusory allegations cannot confer Article III standing.

### c. The remaining allegations are too speculative and conclusory to satisfy standing.

Even after repackaging their allegations, the Amended Complaint in this case, like the *Plutzer* complaint, contains factually insufficient allegations regarding the financial projections

used for the transactions,[7] the valuation methods used,[8] and criticisms of the due diligence performed by the different trustees.[9] The Amended Complaint also includes for the first time allegations regarding the lack of bank financing in the transaction,[10] and the discount for lack of marketability allegedly utilized in the valuation of the Company.[11] All of those criticisms are speculative and conclusory.

As an initial matter, they contain no basis for the Court to accept them as true. None of them are designated as being asserted upon personal knowledge, or are based upon a review of documents. Without more, it is impossible to ascertain whether any of these facts are anything more than pure speculation from their lawyers' self-professed "knowledge and experience in ESOPs."

In *Floyd v. Buffalo Trace Distillery, Inc.*, 2021 WL 1113143, at *3 (E.D. Ky. Mar. 23, 2021), the plaintiff's amended complaint asserted "upon information and belief" that he had been discriminated against on the basis of his race. Even when accepting those allegations as true, the allegations must also be plausible, requiring enough factual content to "support his claim other than his belief that he was terminated because of his race." *Id.* at *3.  The Court in *Floyd* dismissed the plaintiff's amended complaint because even when there are facts that are within the possession of the defendant, the plaintiff must still "plead supporting facts which render his claim plausible beyond just his personal belief that his claim is true." *Id.* (internal citations omitted).

Similarly, in *Ackison Surveying, LLC v. Focus Fiber Solutions, LLC*, 2017 WL 958620, at

---

[7] *Plutzer* Compl., ¶ 63; Amended Compl., ¶ 61.

[8] *Plutzer* Compl., ¶¶ 62, 66-67; Amended Compl., ¶¶ 61, 70-71.

[9] *Plutzer* Compl.¶ 67; Amended Compl., ¶ 73.

[10] Amended Compl., ¶ 48

[11] *Id.* at ¶ 72.

*3 (S.D. Ohio March 13, 2017), the district court dismissed veil piercing claims because neither

the original complaint, nor the proposed amended complaint, contained facts that the court could

rely upon.  The pleadings contained numerous examples of conclusions stated upon information

and belief, but did not adequately set forth facts that supported the conclusions. *Id.* And in *Kline*

*v. Mortgage Electronic Sec. Systems,* 2010 WL 6298271 (S.D. Ohio Dec. 30, 2010), even when

accepting as true allegations offered "upon information and belief" in support of unjust enrichment

claims, the claims were properly dismissed because the amended complaint did not sufficiently

allege facts that supported each of the required elements for unjust enrichment. *Id.* at *9-11.

The same is true here. Plaintiffs' allegations contain "only a generic list of potential

valuation errors, failing to specify what errors the company actually committed." *Plutzer,* 2022

WL 17086483, at *2.  For example, allegations that the "financial projections were unreasonably

optimistic" and the "Trustee did not adequately challenge information provided by PLM" are not

sufficient to assert any harm resulting from allegedly "optimistic projections." Amended Compl.,

¶ 61. The new allegation about the discount for lack of marketability – "Horizon failed to apply a

sufficient discount for lack of marketability" because Horizon "failed to sufficiently account for

the lack of marketability for the stock that was purchased" – is no better. *Id*. at ¶ 72.

Similarly, the Amended Complaint's generic criticisms of the "market valuation

techniques" – that companies with shares traded on a public market are "larger," have "better

access to capital," and have "more diversified set of products and services" than a privately-held

company like PLM – fail to tell the Court how *this Company's valuation for the ESOP Transaction*

improperly deviated from accepted valuation methodology. *Id.* at ¶ 71. And the new allegations

regarding the lack of bank financing in the ESOP Transaction – that a bank "would have been

troubled" by the leveraged nature of the transaction and other alleged issues – says nothing factual

about why *this ESOP Transaction* did not have bank financing, or whether any bank actually had any concerns.  Simply put, speculation about what hypothetical banks would have done, or what differences exist between public companies and smaller private companies, does not set forth plausible allegations of an injury in fact that is concrete, particularized, and actual or imminent.

The *Plutzer* Court rejected this type of pleading. This Court should reject it as well.  The Amended Complaint is nothing more than a collection of conclusory speculation that fails to demonstrate any concrete, particularized and actual injury. Even though the trustees are different, the transactions are different, the companies are different, and the transactions occurred in different years, the same law firm alleged identical allegations in *Plutzer* and the original Complaint, and now tries to change those allegations to avoid the result that they achieved in *Plutzer*. The Amended Complaint is simply an expression of counsel for Plaintiffs' "personal belief that his claim is true" without any supporting facts. *Floyd*, 2021 WL 1113143, at *3. Multiple layers of rewritten conclusory vague allegations should not satisfy Article III standing in this case.

## IV.    CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction, because arbitration is required for any valid claims, and the Complaint fails to set forth sufficient facts to establish Article III standing.

Respectfully Submitted,

/s/ Scott J. Stitt
Scott J. Stitt (Ohio 0073943)
Tucker Ellis LLP
175 S. 3rd St., Suite 520,
Columbus, OH 43215
Telephone: 614-358-9717
Fax: 614-358-9712
scott.stitt@tuckerellis.com

Mitzi D. Wyrick
Wyatt Tarrant & Combs, LLP
400 W. Market St., Suite 2000
Louisville, KY 40202
Telephone: 502-562-7337
Fax: 502-589-0309
mitziwyrick@wyattfirm.com

*Counsel for Defendant Horizon Bank d/b/a*
*Horizon Trust & Investment Management*

/s/ Theresa A. Canaday
Theresa A. Canaday
Jason P. Renzelmann
Frost Brown Todd LLC
400 W. Market St., Suite 3200,
Louisville, KY 40202
Telephone: 502-568-0369
Fax: 502-581-1087
tcanaday@fbtlaw.com
jrenzelmann@fbtlaw.com

*Counsel for Defendants Thomas J. Schuh*
*and Timothy M. Logsdon*

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2023, I electronically filed a copy of the foregoing with the Clerk of court by using the CM/ECF system, which will send a notice of electronic filing to all registered CM/ECF participants in this matter.

/s/ Theresa A. Canaday
*Counsel for Defendants*

0109411.0763401   4873-0001-8516

25