**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION**

| | |
|---|---|
| **KAREN MERROW, THOMAS JORDAN, and MICHAEL CROSS, on behalf of the P.L. Marketing, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,** | |
| **Plaintiffs,** | **Case No. 2:22-cv-00123-DLB-CJS** |
| **v.** | |
| **HORIZON BANK d/b/a/ HORIZON TRUST & INVESTMENT MANAGEMENT, THOMAS J. SCHUH, and TIMOTHY M. LOGSDON,** | |
| **Defendants.** | |

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................. 1

II.    BACKGROUND ................................................................. 3

III.   APPLICABLE LEGAL STANDARDS ................................... 5

IV.   ARGUMENT ...................................................................... 7

       A.     The Motion to Compel Arbitration Or Dismiss Should Be Denied .......... 7

            1.     The. Arbitration Clause is Not Grounds for Dismissal ................. 7

            2.     An Arbitration Clause Provision Permitting only Individual Relief is Invalid as a Prospective Waiver of Statutory Remedies to the Plan ................................................................................. 9

       B.     Plaintiffs Have Constitutional Standing .................................... 16

            1.     The Amended Complaint Alleges the Elements of Article III Standing. ....................................................................... 16

            2.     Plaintiffs Make the Required "General Factual Allegations of Injury." ........................................................................ 19

            3.     The Initial Complaint and Post-Transaction Valuations are Irrelevant. ..................................................................... 22

V.     CONCLUSION ................................................................. 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*14 Penn Plaza LLC v. Pyett*,
556 U.S. 247 (2009) .........................................................................................5

*Allen v. GreatBanc Tr. Co.*,
835 F.3d 670 (7th Cir. 2016) .......................................................................21, 24

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ....................................................................................1, 5, 9

*Anderson v. Charter Commc'ns, Inc.*,
860 F. App'x 374 (6th Cir. 2021) .....................................................................9

*Arabian Motors Grp. W.L.L. v. Ford Motor Co.*,
19 F.4th 938 (6th Cir. 2021) .............................................................................8

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
576 U.S. 787 (2015) ..........................................................................................7

*Best v. James*,
No. 3:20-cv-299, 2023 WL 145007 (W.D. Ky. Jan. 10, 2023) ............................15

*Birse v. CenturyLink, Inc.*,
No. 17-cv-02872, 2019 WL 9467530 (D. Colo. Oct. 23, 2019) ............................23

*Bixby v. Toyota Motor N. Am., Inc.*,
No. 22-59, 2023 WL 2110884 (E.D. Ky. Feb. 17, 2023) ......................................8

*Booker v. Robert Half Int'l, Inc.*,
413 F.3d 77 (D.C. Cir. 2005) (Roberts, J.) ..............................................................10

*Boykin v. Family Dollar Stores of Mich., LLC*,
3 F.4th 832 (6th Cir. 2021) ..........................................................................5, 7

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ......................................................................14, 16

*Brundle v. Wilmington Tr. N.A.*,
241 F. Supp. 3d 610 (E.D. Va. 2017) ..................................................................20

*Brundle v. Wilmington Tr., N.A.*,
919 F.3d 763 (4th Cir. 2019) ..........................................................14, 20, 21, 24

*Burnett v. Prudent Fiduciary Servs. LLC*,
No. 22-270, 2023 WL 387586 (D. Del. Jan. 25, 2023) .............................................10, 14, 15

*Burnett v. Prudent Fiduciary Servs. LLC*,
No. 22-270, 2023 WL 2401707 (D. Del. Mar. 8, 2023) .........................................................10

*In re Carter*,
553 F.3d 979 (6th Cir. 2009) ........................................................................................................6

*Cedeno v. Argent Tr. Co.*,
20-cv-9987, 2021 WL 5087898 (S.D.N.Y. Nov. 2, 2021) .........................................10, 14, 15

*Chao v. Hall Holding Co., Inc.*,
285 F.3d 415 (6th Cir. 2002) ................................................................................................14, 24

*Charlton-Perkins v. Univ. of Cincinnati*,
35 F.4th 1053 (6th Cir. 2022) ......................................................................................................7

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001)........................................................................................................................5

*Dorman v. Charles Schwab Corp.*,
780 F. App'x 510 (9th Cir. 2019) ........................................................................................13, 14

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018)..................................................................................................................15

*FCCI Ins. Co. v. Nicholas Cty. Library*,
No. 5:18-cv-038, 2019 WL 1234319 (E.D. Ky. Mar. 15, 2019) .............................................7

*Feinberg v. T. Rowe Price Grp., Inc.*,
No. MJG-17-0427, 2018 WL 3970470 (D. Md. Aug. 20, 2018)............................................23

*Gerber v. Herskovitz*,
14 F.4th 500 (6th Cir. 2021) ........................................................................................................6

*Gingras v. Think Fin., Inc.*,
922 F.3d 112 (2d Cir. 2019)........................................................................................................10

*Graden v. Conexant Sys. Inc.*,
496 F.3d 291 (3d Cir. 2007)..................................................................................................16, 17

*Hadnot v. Bay, Ltd.*,
344 F.3d 474 (5th Cir. 2003) ......................................................................................................10

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*,
59 F.4th 1090 (10th Cir. 2023) ......................................................................................10, 12, 15

*Hawkins v. Cintas Corp.*,
    32 F.4th 625 (6th Cir. 2022) ............................................................... *passim*

*Henry v. Wilmington Tr., N.A.*,
    No. 19–1925, 2021 WL 4133622 (D. Del. Sept. 10, 2021) ....................................18

*Ingle v. Circuit City Stores, Inc.*,
    328 F.3d 1165 (9th Cir. 2003) ............................................................10

*Innis v. Bankers Tr. Co. of S.D.*,
    No. 4:16-cv-00650, 2017 WL 4876240 (S.D. Iowa Oct. 13, 2017) .......................18

*Javitch v. First Union Sec., Inc.*,
    315 F.3d 619 (6th Cir. 2003) ..............................................................5

*Kenney v. Paris Police Dept.*,
    No. 5:07-CV-358, 2011 WL 1582125 (E.D. Ky. Apr. 26, 2011) ..........................22

*Kramer v. Smith Barney*,
    80 F.3d 1080 (5th Cir. 1996) .............................................................10

*Kristian v. Comcast Corp.*,
    446 F.3d 25 (1st Cir. 2006) ..............................................................10

*Laidig v. GreatBanc Tr. Co.*,
    No. 22-cv-1296, 2023 WL 1319624 (N.D. Ill. Jan. 31, 2023) ...................18, 22, 25

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008) ................................................................ *passim*

*Lee v. Argent Tr. Co.*,
    2019 WL 3729721 (E.D.N.C. Aug. 7, 2019) .........................................22, 25

*Lloyd v. Argent Tr. Co.*,
    No. 22CV4129, 2022 WL 17542071 (S.D.N.Y. Dec. 6, 2022) ............................22

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................2, 6, 17, 19, 24

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) .......................................................2, 11, 14

*Mester v. McGraw Hill, LLC*,
    No. 2:21-cv-1741, 2022 WL 330084 (S.D. Ohio Jan. 4, 2022) ..........................8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ......................................................................5, 9

iv

*Morrison v. Circuit City Stores, Inc.*,
   317 F.3d 646 (6th Cir. 2003) (en banc) ...............................................................5, 10, 11, 13

*Mosley v. Kohl's Dep't Stores, Inc.*,
   942 F.3d 752 (6th Cir. 2019) ..............................................................................................6, 17

*Munro v. Univ. of S. Cal.*,
   896 F.3d 1088 (9th Cir. 2018) ..................................................................................................14

*In re Mutual Funds Inv. Litig.*,
   529 F.3d 207 (4th Cir. 2008) ....................................................................................................16

*In re Omnicare, Inc. Sec. Litig.*,
   769 F.3d 455 (6th Cir. 2014) ....................................................................................................23

*Paladino v. Avnet Comput. Techs., Inc.*,
   134 F.3d 1054 (11th Cir. 1998) ................................................................................................10

*Perez v. Bruister*,
   823 F.3d 250 (5th Cir. 2016) ............................................................................................ *passim*

*Placht v. Argent Tr. Co.*,
   No. 21 C 5783, 2022 WL 3226809 (N.D. Ill. Aug. 10, 2022) ..............................18, 22, 23, 25

*Plutzer v. Bankers Tr. Co. of S.D.*,
   2022 WL 17086483 (2d Cir. Nov. 21, 2022) ......................................................................22, 24

*Pugh v. Lady Jane's Haircuts for Men Holding Co., LLC*,
   No. 3:22-cv-556, 2023 WL 2416366 (M.D. Tenn. Mar. 8, 2023) ...............................................8

*Rajapakse v. Internet Escrow Servs.*,
   No. 1:21-cv-158, 2022 WL 4084417 (E.D. Tenn. Sept. 6, 2022) ...............................................7

*Randall v. TT of C. Louisville, Inc.*,
   No. 3:21-CV-378, 2022 WL 468052 (W.D. Ky. Feb. 15, 2022) .................................................8

*Rodriguez v. Cracker Barrel Old Country Store, Inc.*,
   No. 2:17-cv-20, 2017 WL 6349173 (E.D. Ky. Dec. 12, 2017) .................................................22

*Rotella v. Wood*,
   528 U.S. 549 (2000) ..................................................................................................................24

*Savage v. Sutherland Global Servs., Inc.*,
   521 F. Supp. 3d 308 (W.D.N.Y. 2021) ....................................................................................23

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009) ....................................................................................................14

*Simon v. Pfizer Inc.*,
   398 F.3d 765 (6th Cir. 2005) ........................................................12, 13

*Smith v. Aegon Cos. Pension Plan*,
   769 F.3d 922 (6th Cir. 2014) ..............................................................13

*Smith v. Bd. of Dirs. of Triad Mfg., Inc.*,
   13 F.4th 613 (7th Cir. 2021) ...............................................................10

*Smith v. CommonSpirit Health*,
   No. 20-95, 2021 WL 4097052 (E.D. Ky. Sept. 8, 2021) ......................16

*Spinetti v. Serv. Corp. Int'l*,
   324 F.3d 212 (3d Cir. 2003) ................................................................10

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ....................................................2, 6, 17, 22

*Swain v. Wilmington Tr., N.A.*,
   No. 17–71, 2018 WL 934598 (D. Del. Feb. 16, 2018) ........................18

*Teamsters Local Union 480 v. United Parcel Serv., Inc.*,
   748 F.3d 281 (6th Cir. 2014) ................................................................7

*Thole v. U.S. Bank N.A.*,
   140 S. Ct. 1615 (2020) ...................................................................17, 18

*Threadford v. Horizon Tr. & Inv. Mgmt., N.A.*,
   No. 2:20-CV-00750, 2021 WL 5105330 (N.D. Ala. Oct. 29, 2021) .....21

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .....................................................................2, 17

*U.S. v. Ferguson*,
   681 F.3d 826 (6th Cir. 2012) ..............................................................23

*Viking River Cruises, Inc. v. Moriana*,
   142 S. Ct. 1906 (2022) ...............................................................9, 14, 15

*Warth v. Seldin*,
   422 U.S. 490 (1975) ...........................................................................6, 7

*Williams v. Medley Opportunity Fund II, LP*,
   965 F.3d 229 (3d Cir. 2020) .............................................................6, 10

**Statutes**

9 U.S.C. §§ 2–4 ................................................................................................1, 5, 8

28 U.S.C. § 1331 ....................................................................................................4

28 U.S.C. §§ 2201–2202 ........................................................................................4

29 U.S.C. § 1002(18) (ERISA § 3(18)) ...............................................................19

29 U.S.C. § 1104 (ERISA § 404) .....................................................................3, 16

29 U.S.C. § 1106 (ERISA § 406) ..................................................................3, 4, 16

29 U.S.C. § 1109 (ERISA § 409)................................................................... *passim*

29 U.S.C. § 1113 (ERISA § 413) ...........................................................................9

29 U.S.C. § 1132(a)(1)(B) (ERISA § 502(a)(1)(B)) ..........................................13

29 U.S.C. § 1132(a)(2) (ERISA § 502(a)(2)) ....................................... *passim*

29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) ...................................................4, 15

29 U.S.C. § 1132(e) (ERISA § 502(e))................................................................4

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)..........................................................................................5

Fed. R. Civ. P. 15(a) ............................................................................................22

Fed. R. Civ. P. 56 ..................................................................................................5

Fed. R. Evid. 201(b)..............................................................................................23

Fed. R. Evid. 406 .................................................................................................21

Br. of U.S. Sec'y of Labor, *Cedeno v. Argent Tr. Co.*, No. 21-2891
    (2d Cir. June 10, 2022) ................................................................................10

## I.     INTRODUCTION

Defendants Horizon Bank, Thomas Schuh, and Timothy Logsdon ("Defendants") mistakenly move to dismiss the Amended Complaint ("AC") (Dkt. 22) for lack of subject matter jurisdiction under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3–4, and Fed. R. Civ. P. 12(b)(1) (Dkt. 31, "Motion," at 1). They argue the Court lacks subject matter jurisdiction because (1) the P.L. Marketing, Inc. Employee Stock Ownership Plan (the "Plan" or "ESOP") (Dkt. 31-1) contains a so-called "binding individual arbitration agreement," and (2) the Amended Complaint "fail[s] to allege an injury-in-fact." *Id.* They alternatively urge the Court to compel arbitration under FAA §§ 3 and 4. (Motion at 8 & n.2, 9, 14). The Motion is meritless and should be denied.

Defendants' motion to dismiss under Rule 12(b)(1) on the basis of the Plan's arbitration clause should be denied because an arbitration agreement does not divest a court of subject matter jurisdiction over federal claims, and there can be no dispute that this Court has original jurisdiction over Plaintiffs' claims brought under the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendants' motion to dismiss under the FAA likewise is infirm because dismissal is not a remedy under that statute, which permits a court to compel arbitration and mandates a stay on request where an arbitration agreement is enforceable. 9 U.S.C. §§ 3–4.

In any event, the Plan's arbitration clause is not valid and enforceable because, assuming only for purposes of this Motion that Defendants' interpretation of it to allow relief only to "the individual Plaintiffs' accounts" (Motion at 17) in the Plan is accurate, it effects a prohibited waiver of statutory rights and remedies under ERISA, in violation of the effective vindication doctrine. *See*, *e.g.*, *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235–236 (2013). As part of its civil enforcement regime, ERISA specifically authorizes representative litigation by any participant to remedy injuries to his or her pension plan. *See* 29 U.S.C. §§ 1132(a)(2), 1109(a)

(empowering any participant to seek full payment to the plan of any losses or profits resulting from fiduciary breach and equitable relief to remedy such breach); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985) (explaining that Congress was "primarily concerned … with remedies that would protect the entire plan"). The statute authorizes relief to the Plan, in claims that are necessarily representative on behalf of the Plan. Because the Plan provisions that Defendants cite to purportedly bar Plan-wide relief are non-severable, the arbitration clause is void by its own terms and invalid under the FAA.

Defendants' Rule 12(b)(1) motion for dismissal for alleged failure to plead injury in fact ignores the allegations of injury in the Amended Complaint to the Plan and to the individual accounts of the Plan participants, including Plaintiffs Karen Merrow, Thomas Jordan, and Michael Cross, who were allocated employer stock purchased by the Plan for more than fair market value. The Amended Complaint contains the required "general factual allegations" of injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.") (cleaned up). The Amended Complaint alleges monetary injury to the Plan and the accounts of its participants, including Plaintiffs, which occurred in the June 2017 stock purchase transaction and thereafter with allocations of company stock to the participants' individual Plan accounts. That is a "concrete," "particularized," and "actual or imminent" injury. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–341 (2016); *Lujan*, 504 U.S. at 560 n.1.

The Amended Complaint alleges claims against Defendants under the applicable standards, for the reasons stated below. The Court should deny the Motion in its entirety.

2

## II.     BACKGROUND

Plaintiffs allege a June 6, 2017 "ESOP Transaction" in which the Plan and its trust—the P.L. Marketing, Inc. ESOP Trust ("ESOT")—purchased, directly or indirectly, 100% of the shares of P.L. Marketing, Inc. ("PLM") for $53,000,000 from the party in interest Selling Shareholders, Defendants Schuh and Logsdon, who were PLM officers and directors. (AC ¶¶ 1, 5–6, 9, 19-22, 51, 56, 79). The ESOP Transaction was financed with a loan to the Plan from PLM, which is a party in interest as the Plan's sponsor whose employees are covered by the Plan and as the fiduciary Plan administrator and a named fiduciary. (*Id.* ¶¶ 5, 33–41, 52, 80). The Plan is an employee stock ownership plan, a pension plan, and an individual account or defined contribution plan under ERISA. (*Id.* ¶¶ 29, 30, 32). Plaintiffs are Plan participants who were vested in PLM shares allocated to their Plan accounts. (*Id.* ¶¶ 2, 14–16, 44). Defendant Horizon Bank was the Plan's trustee and an ERISA fiduciary and had sole fiduciary responsibility for determining the value of the stock on behalf of the Plan and sole authority to negotiate and approve the ESOP Transaction on the Plan's behalf. (*Id.* ¶¶ 1, 3, 7, 18, 46, 47, 50, 82).

Plaintiffs allege Horizon violated ERISA's prohibited transaction and fiduciary duty rules by approving the ESOP Transaction. Count I alleges three violations of ERISA § 406(a), 29 U.S.C. § 1106(a), by Horizon in approving the stock and loan transactions between the Plan and parties in interest. (AC ¶¶ 78–86). Count II alleges Horizon breached its ERISA § 404(a), 29 U.S.C. § 1104(a), fiduciary duties when it failed to appropriately and independently investigate the fair market value of the stock; failed to act independently and probe the projections and other information provided to it by PLM management; and failed to negotiate for the Plan to pay no more than fair market value. (AC ¶¶ 87–96). Count III alleges a "knowing participation" claim against Defendants Schuh and Logsdon for their participation in the stock purchase transaction

prohibited under ERISA §§ 406(a)(1)(A) and 406(a)(1)(D), 29 U.S.C. §§ 1106(a)(1)(A), 1106(a)(1)(D), and Horizon's breaches of fiduciary duty. (AC ¶¶ 9-10, 97–108). Count IV seeks a declaratory judgment under 28 U.S.C. §§ 2201–2202 declaring that: § 7.7(f) of the Plan's arbitration clause is unenforceable to the extent it allegedly bars the statutory relief to the Plan sought in Plaintiffs' representative claims brought on behalf of the Plan; Defendants are barred from enforcing the clause by operation of its § 7.8 non-severability clause; and/or that the arbitration clause is void. (*Id.* ¶¶ 109–119).

Plaintiffs bring this lawsuit on behalf of the Plan and a proposed class of similarly situated Plan participants and beneficiaries. (AC at caption, preamble, ¶¶ 3, 11, 85, 91, 114, 119, 120). Plaintiffs sue under ERISA § 502(a)(2) seeking to recover "any losses to the plan" and improper profits under § 409(a) and disgorgement under § 502(a)(3)—and other relief including reformation and rescission of Transaction contracts and enjoining and removal of fiduciaries—arising from Horizon's ERISA violations, including recovering the excess amount between fair market value at the time of the June 6, 2017 Transaction and what the Plan paid for the stock. 29 U.S.C. §§ 1109(a), 1132(a)(2), 1132(a)(3); AC ¶¶ 3, 10, 11, 74, 75, 84, 85, 90, 91, 98, 99, 108, 114. Plaintiffs allege the Plan and its ESOT were injured in the Transaction when they overpaid for the stock and suffered monetary loss in 2017. (AC ¶¶ 3–5, 51, 60, 61, 70-72, 74–76, 86, 94, 96, 123). Plaintiffs, like other participants, were injured with monetary losses to their Plan accounts, which were worth less than they should have been because they were allocated the Plan's overpriced stock from 2017 to 2020 and received fewer PLM shares than they should have received, and any monies recovered to the Plan should be allocated to the participants' accounts. (*Id.* ¶¶ 2–4, 10, 14–16, 44, 75, 123). This Court has subject matter jurisdiction pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331. (*Id.* ¶¶ 11, 12).

## III.     APPLICABLE LEGAL STANDARDS

**FAA, 9 U.S.C. §§ 3–4.** The FAA governs written arbitration agreements. 9 U.S.C. §§ 2–4; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111–12 (2001). "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). The Sixth Circuit recently held Fed. R. Civ. P. 56 standards apply generally on FAA § 4 motions to compel arbitration, but posited Fed. R. Civ. P. 12(b)(6) can be appropriate. *See Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 838 (6th Cir. 2021). Dismissal is a "remedy … that the Federal Arbitration Act does not provide." *Id.*

An arbitration provision is invalid if it acts "'as a prospective waiver of a party's *right to pursue* statutory remedies.'" *Am. Express*, 570 U.S. at 235–236 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)) (emphasis in original). And "[t]hat would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." *Id.* at 236; *see*, *e.g.*, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273 (2009) ("a substantive waiver of federally protected civil rights will not be upheld"); *Circuit City*, 532 U.S. at 123. The plaintiff must be able to "effectively . . . vindicate its statutory cause of action," so that "the statute will continue to serve both its remedial and deterrent function." *Mitsubishi Motors*, 473 U.S. at 637. "It is well-established that a party does not forgo the substantive rights afforded by a statute when she agrees to arbitrate a statutory claim but only submits to their resolution in an arbitral, rather than a judicial, forum." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 670 (6th Cir. 2003) (cleaned up) (en banc) (declining to enforce Circuit City's limitations on remedies available under its arbitration agreement). "Put differently, while arbitration may be

5

a forum to resolve disputes, an agreement to resolve disputes in that forum will be enforced only when a litigant can pursue his statutory rights there." *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 238 (3d Cir. 2020) (citations omitted).

**Rule 12(b)(1).** A motion to dismiss for lack of Article III standing is a challenge to the court's subject matter jurisdiction under Rule 12(b)(1). *See In re Carter*, 553 F.3d 979, 984 (6th Cir. 2009). On a facial attack on the pleadings for lack of standing, the court must accept as true all material allegations of the complaint, construe the complaint in favor of the plaintiff, and draw all inferences in favor of the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019). The plaintiff must allege facts demonstrating the elements of standing: (1) an injury in fact suffered by the plaintiff, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 578 U.S. at 338; *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021). A plaintiff has a cognizable injury in fact where he "establish[es] the invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Gerber*, 14 F.4th at 505–506 (cleaned up) (quoting *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560)).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (cleaned up); *accord Mosley*, 942 F.3d at 756. "[T]he standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf," an inquiry that "in no way depends on the merits of the plaintiff's contention that particular conduct" creates

liability. *Warth*, 422 U.S. at 498–500 (cleaned up); *see also Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015) (courts must not confuse weakness of a claim on the merits with absence of Article III standing); *Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053, 1058–1059 (6th Cir. 2022) ("the district court's conflation of jurisdiction and the merits cuts against the basic principle that those distinct analyses must be conducted separately … whether a plaintiff can get into federal court under Article III—a jurisdictional question—is not determined by whether he can also plausibly plead the elements of a cause of action—a merits question.").

## IV.    ARGUMENT

### A.    The Motion to Compel Arbitration Or Dismiss Should Be Denied

#### 1.    <u>The Arbitration Clause is Not Grounds for Dismissal.</u>

Defendants move for dismissal of the Amended Complaint because the Plan contains an arbitration clause. But Rule 12(b)(1) and the FAA are not mechanisms for dismissal here. The Rule 12(b)(1) motion is meritless because an arbitration clause does not divest a court of subject matter jurisdiction. *See Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014) (rejecting 12(b)(1) motion for enforcement under Labor Management Relations Act of arbitration clause because arbitration is not a subject matter jurisdiction issue); *Rajapakse v. Internet Escrow Servs.*, No. 1:21-cv-158, 2022 WL 4084417, at *4 (E.D. Tenn. Sept. 6, 2022) (holding in FAA case, "the mere existence of an arbitration agreement between the parties does not deprive the Court of subject-matter jurisdiction over the parties' dispute"); *FCCI Ins. Co. v. Nicholas Cty. Library*, No. 5:18-cv-038, 2019 WL 1234319, at *4 (E.D. Ky. Mar. 15, 2019) ("[T]he defect created by the binding arbitration clause … does not appear to be a lack of subject matter jurisdiction where the Court in fact has and may retain subject matter jurisdiction pending arbitration."). *Boykin* states the Sixth Circuit's current view on mechanisms for enforcement of an arbitration agreement, and Rule 12(b)(1) is not one of them. 3 F.4th at 836-38. And Defendants'

motion to dismiss under the FAA is flawed because dismissal is a "remedy … that the Federal Arbitration Act does not provide." *Id.* at 838.

Further, the Sixth Circuit construes FAA § 3 to mandate a stay on request, precluding dismissal if an arbitration clause is enforceable. *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941 (6th Cir. 2021) ("The Act's command that a district court 'shall on application of one of the parties stay the trial of the action' conveys a mandatory obligation," noting in dicta potential exceptions); *Randall v. TT of C. Louisville, Inc.*, No. 3:21-CV-378, 2022 WL 468052, at *9–10 (W.D. Ky. Feb. 15, 2022) (granting stay under *Arabian Motors*, which "noted that the Congressional intent behind the FAA was for 'district courts to grant a stay when a party moves for one in this context,' with 'few, if any, exceptions'"); *Mester v. McGraw Hill, LLC*, No. 2:21-cv-1741, 2022 WL 330084, at *4 (S.D. Ohio Jan. 4, 2022) ("Recent Sixth Circuit caselaw makes clear that Section 3's use of 'shall' requires the Court to stay the case so that is what the Court will do."); *cf. Bixby v. Toyota Motor N. Am., Inc.*, No. 22-59, 2023 WL 2110884, at *4 (E.D. Ky. Feb. 17, 2023) (staying absent request as "the Sixth Circuit has … expressed a general preference for courts to stay matters pending arbitration, as opposed to outright dismissal"). Plaintiffs hereby apply for a stay should the arbitration clause be held enforceable. *See Pugh v. Lady Jane's Haircuts for Men Holding Co., LLC*, No. 3:22-cv-556, 2023 WL 2416366, at *10–11 (M.D. Tenn. Mar. 8, 2023) (staying on request as *Arabian Motors* "recently construed § 3 as a mandatory 'command'"); *Randall*, 2022 WL 468052, at *10 (where plaintiff's response brief requested stay, court granted request to stay pending arbitration). The Court should deny Defendants' motion for dismissal on the basis of the arbitration clause, and should stay the case if arbitration proceeds.[1]

---

[1] Dismissal also would be an abuse of discretion because an arbitrator may not resolve all of Plaintiffs' claims and due to the expiration on June 6, 2023, of the six-year statute of repose in

2.    **An Arbitration Clause Provision Permitting only Individual Relief is Invalid as a Prospective Waiver of Statutory Remedies to the Plan.**

The question presented is *not* whether an arbitration clause in the abstract may compel arbitration of ERISA claims. Nor is the question whether an arbitration clause may waive class or collective actions or whether Plaintiffs' claims are within the scope of the clause. Rather, the question presented is whether *this* arbitration clause compels arbitration of *these* Plaintiffs' representative claims for relief to their ESOP where the clause eviscerates the statutory remedies Plan participants may seek for their ERISA plan. Defendants interpret the arbitration clause to allow only individualized relief to the Plaintiffs' individual Plan accounts, rather than "any losses to the plan" and other plan-wide relief mandated by ERISA §§ 409(a) and 502(a)(2). That is a prohibited prospective waiver violating the effective vindication doctrine. Because there is no dispute that the provisions on which Defendants rely (Plan §§ 7.6, 7.7(f)) are not severable (*see* Motion at 5), the arbitration clause is "voided" by its own terms upon a court decision that they are "unenforceable" (Plan § 7.8), and the whole arbitration clause is invalid under the FAA.

An arbitration provision forbidding assertion of statutory rights and remedies is not enforceable. *See Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 (2022) ("the FAA does not require courts to enforce contractual waivers of substantive rights and remedies"); *Am. Express*, 570 U.S. at 235–236; *Mitsubishi Motors*, 473 U.S. at 628, 637 & n.19. Stated differently, an arbitration agreement that operates as a "prospective waiver" of statutory remedies is void as against public policy. *Mitsubishi Motors*, 473 U.S. at 637 n.19. Thus, numerous federal appellate courts, including the Sixth Circuit, have followed the Supreme Court's reasoning and held that arbitration agreements that eliminate statutory rights or the ability to pursue statutory remedies are

---

ERISA § 413, 29 U.S.C. § 1113, which began running with the ESOP Transaction. *See Anderson v. Charter Commc'ns, Inc.*, 860 F. App'x 374, 380 (6th Cir. 2021).

unenforceable. *See Morrison*, 317 F.3d at 670–673 (finding unenforceable arbitration provision requiring plaintiff "to forego her substantive rights to the full panoply of remedies under Title VII").[2] And the courts have so held where arbitration clauses prohibit the plan-wide relief provided under ERISA. *See Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090, 1101, 1107 (10th Cir. 2023) (holding ESOP arbitration clause would impermissibly prevent plaintiff from effectively vindicating ERISA remedies).[3]

---

[2] *See also Williams*, 965 F.3d at 238-43 (holding arbitration clause impermissibly prevented bringing a RICO claim); *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 127 (2d Cir. 2019) ("[A]rbitration agreements that waive a party's right to pursue federal statutory remedies are prohibited."); *Kristian v. Comcast Corp.*, 446 F.3d 25, 48 (1st Cir. 2006) (arbitration provision could not eliminate treble damages authorized by antitrust statute); *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79 (D.C. Cir. 2005) (Roberts, J.) (impermissible waiver of punitive damages: "Statutory claims may be subject to agreements to arbitrate, so long as the agreement does not require the claimant to forgo substantive rights afforded under the statute."); *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 216 (3d Cir. 2003) (impermissible waiver of attorney's fees); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 & n.14 (5th Cir. 2003) (arbitration clause that eliminated punitive damages under Title VII was unenforceable); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1178 (9th Cir. 2003) (holding unenforceable arbitration clause that "fails to provide for all the types of relief that would otherwise be available in court"); *Paladino v. Avnet Comput. Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) (holding arbitration clause's prohibition on damages and equitable relief under Title VII unenforceable); *Kramer v. Smith Barney*, 80 F.3d 1080, 1085 (5th Cir. 1996) (invalidating arbitration clause's shortened limitations period for ERISA fiduciary claims).

[3] *See also Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 621–623 (7th Cir. 2021) (under "effective vindication" exception ESOP's arbitration provision unenforceable because it prohibited ERISA equitable remedies); *Cedeno v. Argent Tr. Co.*, 20-cv-9987, 2021 WL 5087898, at *4-6 (S.D.N.Y. Nov. 2, 2021) ("the provision in [the ESOP] that precludes an individual participant from seeking Plan-wide relief is invalid because it seeks to waive prospectively the statutory remedies in ERISA § 409(a) that a Plan participant is entitled to seek under ERISA § 502(a)(2)"), *appeal docketed*, No. 21-2891 (2d Cir. Nov. 22, 2021); *Burnett v. Prudent Fiduciary Servs. LLC*, No. 22-270, 2023 WL 387586, at *1 (D. Del. Jan. 25, 2023) (recommending denial of motion to compel arbitration in ESOP case: "Although § 1132(a)(2) permits plan beneficiaries such as Plaintiffs to seek relief on behalf of the plan as a whole, the arbitration provision at issue in this case purports to bar Plaintiffs from seeking relief for the plan as a whole. Because that portion of the arbitration provision is invalid and is not severable from the remainder of the arbitration provision, Defendants' motion to compel arbitration should be DENIED."), *adopted by* 2023 WL 2401707 (D. Del. Mar. 8, 2023) (finding *Harrison* persuasive); *cf.* Br. of U.S. Sec'y of Labor at 7-8, *Cedeno v. Argent Tr. Co.*, No. 21-2891 (2d Cir. June 10, 2022) (DOL explains plan-wide relief is an ERISA statutory remedy, which cannot be prospectively waived, and because "the

Accepting for purposes of this Motion Defendants' interpretation, the arbitration clause here eviscerates ERISA's remedies in direct conflict with the above authorities. ERISA § 502(a)(2) authorizes participants to sue for the plan-wide relief provided in § 409. *See* 29 U.S.C. § 1132(a)(2) (providing "[a] civil action" "for appropriate relief under section 1109"). The 502(a)(2) claim is "brought in a representative capacity on behalf of the plan as a whole." *Russell*, 473 U.S. at 142 n.9. ERISA § 409(a) authorizes a plan participant to restore "*any losses to the plan* resulting from each … breach, and to restore to such plan *any profits* of [a] fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109(a) (emphasis added). These are the core, substantive damages remedies for fiduciary violations. It is "abundantly clear" that ERISA's congressional draftsmen "were primarily concerned with the possible *misuse of plan assets*, and with remedies that *would protect the entire plan*, rather than with the rights of an individual beneficiary." *Russell*, 473 U.S. at 142 (emphasis added); *see also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 251, 254 (2008) (explaining, "Section 502(a)(2) provides for suits to enforce the liability-creating provisions of § 409, concerning breaches of fiduciary duties that harm plans" and "§§ 502(a)(2) and 409 protect the financial integrity of the plan"). But Defendants interpret the arbitration clause here to limit a participant's remedies to his or her individual account. A tiny fraction of plan losses is not "any" plan losses and the arbitration clause as so read "undermines both the remedial and deterrent principles of [the statute]," which protect the financial integrity of a plan. *Morrison*, 317 F.3d at 670 ("The critical question is not whether a claimant may obtain *some* amount of the entire range of remedies under [the statute], but whether the limitation on remedies at issue undermines the rights protected by the statute.").

---

arbitration agreements here preclude[] participants from seeking the very plan-wide relief that ERISA explicitly authorizes in sections 502(a)(2) and 409(a), the district court correctly determined that this provision was invalid and denied the motion to compel arbitration").

*LaRue* reinforces this core point. The Court explained "[w]hether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § 409." 552 U.S. at 256. So, § 502(a)(2) authorizes a participant to recover "any" plan losses even for "fiduciary breaches that impair the value of plan assets in a participant's individual account." *Id.* Put another way: a participant's ability to recover "any losses" to a plan under § 502(a)(2) includes the ability to recover plan losses when only a subset (or one) of the accounts in a defined contribution plan have lost money from a fiduciary breach, as "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries." *Id.*; *see also Hawkins v. Cintas Corp.*, 32 F.4th 625, 631 (6th Cir. 2022) ("*LaRue* ... means that while any claims properly brought under § 502(a)(2) must be for injuries to the plan itself, § 502(a)(2) authorizes suits on behalf of a defined-contribution plan even if the harm is inherently individualized."). That understanding follows the text: "The plain text of § 409(a), which uses the term 'plan' five times, leaves no doubt that § 502(a)(2) authorizes recovery only for the plan." *Id.* at 261 (Thomas, J. concurring). "On their face, §§ 409(a) and 502(a)(2) permit recovery of *all* plan losses caused by a fiduciary breach." *Id.* (emphasis in original); *see also Harrison*, 59 F.4th at 1111 (citing *LaRue*, court holds: "§§ 1132(a)(2) and 1109 allow claimants to obtain certain forms of plan-wide relief. Indeed, the Supreme Court has made clear that § 1132(a) does not provide a remedy for individual injuries distinct from plan injuries."). *LaRue* does not authorize ignoring the bulk of a plan's loss from an ERISA breach and limiting § 502(a)(2) claims to an individual account.

The Sixth Circuit ERISA decisions that Defendants cite do not consider violation of the effective vindication doctrine by an arbitration agreement. In *Simon*, the Sixth Circuit compelled arbitration of a benefit claim covered by an arbitration clause in an ERISA severance plan. *Simon*

*v. Pfizer Inc.*, 398 F.3d 765, 773-74 (6th Cir. 2005). Whether the arbitration of the benefit claim impaired a substantive right or remedy did not come up. Indeed, the issues raised here could not be at issue in *Simon* as the arbitrable claim was a § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), claim for an individual participant's benefits, and not a § 502(a)(2) claim for plan-wide relief. 398 F.3d at 773 n.13; *see also Hawkins*, 32 F.4th at 635 (distinguishing § 502(a)(1)(B) claims from § 502(a)(2)). Thus, *Simon* provides no guidance on this issue.

In *Smith*, the Sixth Circuit evaluated the enforceability of a venue clause as applied to a benefit claim under a three-part test for venue clauses. *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 930 (6th Cir. 2014). It did not evaluate the enforceability of an arbitration clause. The test for determining the enforceability of an arbitration agreement is different from the test for determining the enforceability of a venue clause. Among other things, an arbitration clause may not impair a substantive right or remedy, which is not an issue on a venue dispute between alternative federal courts. *See id.* at 933 n.9; *Morrison*, 317 F.3d at 653, 670.

The question in *Hawkins*, not relevant here, was if the § 502(a)(2) claims were covered by arbitration provisions in the plaintiffs' employment agreements and their plan's consent was required for arbitration. 32 F.4th at 637. While *Hawkins* says a plan can agree to arbitrate and that might be enforceable against a participant, a plan cannot agree to prospectively waive statutory rights and remedies any more than any other party to an arbitration agreement, and *Hawkins* says nothing to the contrary. As shown by the numerous citations herein, *Hawkins* supports Plaintiffs' construction of *LaRue* and § 502(a)(2), and shows Defendants' arguments hold no water.

Defendants put much stock in an unpublished decision outside the Sixth Circuit. Motion at 10-11, 15-16 (discussing *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. 2019)). To the extent *Dorman* stands for the proposition that an arbitration clause may limit ERISA's

statutory remedy of "any" plan losses to losses suffered by an individual's account, *Dorman* is bad law because it greatly diminishes statutory damages. *See*, *e.g.*, *Burnett*, 2023 WL 387586, at *7 n.7 (rejecting *Dorman* in ESOP case and concluding it misapplied *LaRue*); *Cedeno*, 2021 WL 5087898, at *5 n.5 (same). The *Dorman* panel offered virtually no reasoning for its conclusion, and it did not even cite *Russell*, let alone square its holding with the Supreme Court's prospective waiver rule or the Supreme Court's statement that all claims under § 502(a)(2) are necessarily representative in nature. *Russell*, 473 U.S. at 142 n.9 (§ 502(a)(2) claims are brought "in a representative capacity"); *Hawkins*, 32 F.4th at 633 ("Plaintiffs' 'right,' even according to [defendant], is to bring a representative action pursuant to § 502(a)(2).").[4] *Dorman* further conflicts with the authorities holding that the relief in private company ESOP litigation is ***all*** the plan's losses, measured by the amount the plan overpaid for company stock. *See Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 420, 444 (6th Cir. 2002); *Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 781 (4th Cir. 2019); *Perez v. Bruister*, 823 F.3d 250, 258, 265-66 (5th Cir. 2016). And *Dorman* conflicts with the more recent Supreme Court decision in *Viking River*, which held an

---

[4] *Dorman* also conflicts with prior, controlling Ninth Circuit law on this issue, as well as this and other circuits' law, which hold, contrary to the panel decision, that *LaRue* does *not* recognize that defined contribution plan claims are "inherently individualized." *See Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1092-94 (9th Cir. 2018) (rejecting misinterpretation "that individuals may seek individual recovery in the context of defined contribution plans" because "*LaRue* cannot bear the weight USC places on it" and "it is the plan, and not the individual beneficiaries and participants, that benefit from a winning claim for breach of fiduciary duty, even when the plan is a defined contribution plan"); *Hawkins*, 32 F.4th at 634 ("The fact that the individual Plaintiffs will indirectly benefit from a remedy accruing to the Plan as a whole does not render the claims individualized."); *Bruister*, 823 F.3d at 258 (citing *LaRue*, then explaining that "the 'loss [] to the plan' is the amount that the ESOP overpaid" and "[c]onsequently, the losses suffered by the participants in the ESOP are coterminous with those of the plan") (second alteration added); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595 & n.9 (3d Cir. 2009) (holding the "ERISA § 502(a)(2) claim is brought on behalf of the plan" even where it is a defined contribution plan and *LaRue* "does not suggest otherwise"); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) (explaining participant's "own recovery will stand or fall with that of the Plan because § 1132(a)(2) 'does not provide a remedy for individual injuries distinct from plan injuries'").

arbitration provision purporting to waive a plaintiff's standing to assert claims on behalf of "a single principal," such as a trust, is not enforceable. 142 S. Ct. at 1920, 1922.

The *Best* decision is inapposite to the extent its analysis of an arbitration provision added to an ESOP by amendment was not on prospective waiver but, rather, issues of consent to arbitrate. *Best v. James*, No. 3:20-cv-299, 2023 WL 145007, at *4-5 (W.D. Ky. Jan. 10, 2023). With regard to arbitration provisions in the plaintiffs' individual employment agreements, the court held that "under *Hawkins* the individual employee agreements cannot bind the plan to arbitration" on § 502(a)(2) claims brought on behalf of the plan. *Id.* at *3. *Best* has little if any relevance to this case as the court was not properly presented with prospective waiver and § 502(a)(2) issues, where the plaintiffs led the court to believe their claims were under § 502(a)(3) for individual, rather than plan-wide, relief. *Id.* at *3-4.

It is important to underscore Plaintiffs do not argue class or collective action waivers are unenforceable. Defendants go too far, however, suggesting *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018), allows waiver of representative actions under §§ 502(a)(2) and 409(a). (Motion at 14, 17). *Epic Systems* and related cases address class or collective arbitration, that is, procedural mechanisms to aggregate multiple individual claims. Sections 502(a)(2) and 409, however, are not procedural rules for aggregating individual claims. To the contrary, they confer a ***right*** on a single plan participant to sue for a ***remedy*** to an employee benefit plan. *See Harrison*, 59 F.4th at 1110–1111 (distinguishing *Epic Systems*); *Burnett*, 2023 WL 387586, at *7-8 (same); *Cedeno*, 2021 WL 5087898, at *5-6 (same). This statutory regime has nothing to do with aggregating or collecting individual claims.[5] And nothing in the FAA authorizes parties to rewrite statutory remedies.

---

[5] To be sure, Plaintiffs allege a class action and agree the class action waiver would be enforceable but for prospective waiver of statutory remedies and non-severability. *See Harrison*, 59 F.4th at

**B.      Plaintiffs Have Constitutional Standing**

**1.      The Amended Complaint Alleges the Elements of Article III Standing.**

In defined contribution plan cases like this, a plaintiff satisfies "the requirements of Article III [where] he has alleged actual injury to his own Plan account . . . fairly traceable to [a defendant's] conduct . . . [and] likely to be redressed by a favorable judgment." *Braden*, 588 F.3d at 592; *see also In re Mutual Funds Inv. Litig.*, 529 F.3d 207, 216 (4th Cir. 2008) (first two elements met on plaintiffs' allegations "they suffered injury in that their retirement accounts were worth less than they would have been absent the breach of duty, and this injury was caused … by the fiduciaries' misconduct"); *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 295 (3d Cir. 2007) ("Graden alleges that Conexant's mismanagement of plan assets caused a loss to the plan that ultimately harmed him and other plan participants. . . . this allegation clearly qualifies as a concrete injury traceable to Conexant and redressable by a court"); *Smith v. CommonSpirit Health*, No. 20-95, 2021 WL 4097052, at *3 (E.D. Ky. Sept. 8, 2021) (finding standing where plaintiff "alleged injury to her own Plan account which is traceable to the Defendants' conduct and which would be redressed by a favorable decision"). Plaintiffs allege these elements.

There is no dispute on this motion that: (1) Plaintiffs are Plan participants who vested in shares of PLM in their Plan accounts; and (2) Horizon was responsible for the stock valuation and approval of the transaction that Plaintiffs allege caused injury to their accounts because the Plan was made to overpay in violation of ERISA §§ 404 and 406. Plaintiffs seek to recover the Plan's

---

1109 ("It is not [the] prohibition on class actions that is problematic. Rather, it is [the] prohibition … of relief that would benefit anyone other than [Plaintiffs] that directly conflicts with the statutory remedies available under … §§ 1109 and 1132(a)(2), (a)(3)."). As in *Hawkins*, that Plaintiffs bring their claims on behalf of a proposed class doesn't negate the fact that "the Complaint plainly seeks relief for the Plan as a whole and expressly states that Plaintiffs are suing on behalf of the Plan." 32 F.4th at 634.

losses under ERISA §§ 409(a) and 502(a)(2). ERISA makes fiduciaries personally liable for breaches of their fiduciary duties, *see* ERISA § 409(a), and authorizes recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account. ERISA § 502(a)(2); *LaRue*, 552 U.S. at 256. In ESOP cases like this where the participants' accounts hold employer stock for which the ESOP overpaid, the participants are injured along with their ESOP such that their losses are "coterminous" with their plan's losses. *Bruister*, 823 F.3d at 258 ("the 'loss [] to the plan' is the amount that the ESOP overpaid for [company] stock. Consequently, the losses suffered by the participants in the ESOP are coterminous with those of the plan, and [Plaintiff's] individual claim is proportional to the claims and losses of fellow participants.").

Plaintiffs have therefore alleged injury to themselves that is "particularized" because it affects them "in a personal and individual way," as affecting their Plan accounts. *Mosley*, 942 F.3d at 757 (quoting *Lujan*, 504 U.S. at 560 n.1). The alleged injury is "actual or imminent" because it happened in 2017 to 2020 when the Plan was injured in the ESOP Transaction and Plaintiffs were allocated PLM shares to their Plan accounts. (AC ¶¶ 2–5, 14–16, 44, 51, 60–61, 70–76, 123). The alleged injury is "concrete" and "tangible" as a real monetary loss existing since 2017, not an abstract injury or a bare procedural violation divorced from any concrete harm. *Spokeo*, 578 U.S. at 340–341; *TransUnion*, 141 S. Ct. at 2204 ("certain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as … monetary harms. If a defendant has caused … monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."); *Graden*, 496 F.3d at 295.[6]

---

[6] Defendants cite *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020), which held that pleading a statutory violation without injury does not establish a case or controversy, but Plaintiffs do not claim otherwise. Participants will always be injured in meritorious private company ESOP cases because the losses to their individual accounts are "coterminous" with their plans' losses.

This lawsuit is about the Plan's overpayment for company stock, which is allocated to participants' individual accounts (including Plaintiffs'), in a transaction caused by Horizon in violation of its duties under ERISA, which provides causes of action against Horizon. Therefore, as demonstrated in numerous other private company ESOP cases, the standing elements are alleged, including injury to Plaintiffs, Plan participants. *See Laidig v. GreatBanc Tr. Co.*, No. 22-cv-1296, 2023 WL 1319624, at *5 (N.D. Ill. Jan. 31, 2023) ("Plaintiffs have pled concrete financial harm to their shares in the Plan as a result of the company's inflated sale price. This alleged monetary harm readily qualifies as a concrete injury."); *Placht v. Argent Tr. Co.*, No. 21 C 5783, 2022 WL 3226809, at *2–4 (N.D. Ill. Aug. 10, 2022) (holding "Article III standing … requires a plaintiff to show an injury-in-fact that is fairly traceable to the defendant's conduct and that could likely be redressed by a favorable court decision," court denies 12(b)(1) motion in ESOP case); *Henry v. Wilmington Tr., N.A.*, No. 19-1925, 2021 WL 4133622, at *4 (D. Del. Sept. 10, 2021) ("Plaintiff alleges that he held BSC stock in his individual account in the Plan, has a vested interest in that stock, and the value of the stock in his account was diminished due to Defendants' ERISA violations in the stock purchase transaction that caused the Plan to pay too much for the stock and caused fewer shares to be allocated to Plaintiff. These allegations, taken together and accepted as true, are sufficient to establish Plaintiff's standing.").[7] For these reasons, the Court should hold Plaintiffs have constitutional standing and deny the Rule 12(b)(1) motion to dismiss.

---

*Bruister*, 823 F.3d at 258. The Supreme Court itself distinguished *Thole*, which concerned a defined-benefit plan, from defined-contribution plan (a.k.a. individual account plan) litigation like this case. 140 S. Ct. at 1618–1619.

[7] Plaintiffs' counsel were counsel in these three recent cases where courts held the plaintiffs had constitutional standing. *See also Swain v. Wilmington Tr., N.A.*, No. 17–71, 2018 WL 934598, at *4 (D. Del. Feb. 16, 2018) ("the court finds that Plaintiffs' complaint demonstrates a cognizable injury-in-fact with respect to the damages claims"); *Innis v. Bankers Tr. Co. of S.D.*, No. 4:16-cv-00650, 2017 WL 4876240, at *3-5 (S.D. Iowa Oct. 13, 2017) (denying 12(b)(1) motion).

2. **Plaintiffs Make the Required "General Factual Allegations of Injury."**

As noted in Part III, *supra*, how a plaintiff must allege injury at the pleading stage has been long defined by the Supreme Court: "At the pleading stage, *general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts* that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (emphasis added). The Amended Complaint more than meets this requirement.

The Amended Complaint alleges Horizon caused the Plan to pay more than fair market value for PLM stock in the 2017 stock purchase transaction. (AC ¶¶ 3–5, 60, 61, 70-72, 74–76, 86, 94, 96, 123). That should end the inquiry because fair market value, although incorporated into the statute (29 U.S.C. § 1002(18)), is a question of fact based on numerous contemporaneous valuation assumptions. The Amended Complaint further alleges the individual Plan accounts of participants, including Plaintiffs', were injured because they were allocated such overvalued stock and did not receive the retirement benefits they earned. (AC ¶¶ 2–4, 14–16, 44, 75, 123). Again, the injury to the ESOP is the same as the injury to its participants. *Bruister*, 823 F.3d at 258.

But Plaintiffs allege yet more details about how the Plan was made to overpay:

• The Amended Complaint alleges PLM had a single customer, The Kroger Company, on which it was overly reliant; there was "danger inherent in this business model of reliance on a single customer"; PLM was in decline before the 2017 ESOP Transaction; and PLM had a reduction in force of 40% when Kroger did not renew contracts in 2020. (AC ¶¶ 23, 62-70). Despite the obvious danger, "PLM management provided financial statements and projected cash flows and earnings to the Trustee for the valuation in the ESOP Transaction … [that] were unreasonably optimistic." (*Id.* ¶ 61). Horizon caused the ESOP to overpay upon valuation techniques using "unrealistic growth projections," and the danger inherent in PLM's business

19

model "was realized." (*Id.* ¶¶ 61, 64).

- "Horizon's appraisal of PLM stock … used market valuation techniques [that] derived value based on supposedly comparable companies to PLM." (AC ¶ 70). But use of comparators that were "not a good match" can and did cause the stock to be overvalued. *Brundle*, 919 F.3d at 776 n.7; AC ¶¶ 70, 71. Horizon improperly "selected comparable companies [that] were not reliant on the business of a single customer"; improperly used larger companies, companies with "a much more diversified set of products and services," and public companies; and it used improper discounts. (AC ¶¶ 70, 71). Thus the stock was overvalued and the Plan overpaid.

- The Selling Shareholders controlled PLM after the ESOP Transaction but the Plan did not receive a discount for lack of control and improperly paid on a control basis. (AC ¶¶ 56, 59-60).

- Horizon failed to apply a sufficient discount for lack of marketability (DLOM) to its valuation because it failed to sufficiently account for the lack of marketability for the stock that was purchased by the ESOT. (AC ¶ 72). Horizon applied a DLOM based on Plan participants' "put option," which was improper as "the Plan was the purchaser in the ESOP Transaction and the participants' put option did not reduce the lack of marketability to the ESOT." *Id.* In addition, the Plan's lack of control over PLM made it lack marketability. *Id.*

- Horizon's routine practice is "failing to apply sound business principles of evaluation and to conduct a prudent investigation and negotiation." (AC ¶ 73). The routine practice is supported by routine industry practices of ESOP trustees, as observed in case law that shows ESOP trustees incorrectly contend that they may do a lesser (and cheaper) level of due diligence than a so-called "real world buyer" (*i.e.*, anyone else buying a company). *Brundle v. Wilmington Tr. N.A.*, 241 F. Supp. 3d 610, 637 (E.D. Va. 2017); AC ¶ 73. And these industry practices have been observed by Plaintiffs' counsel in numerous ESOP cases, which must be a factor in "potential plaintiffs' cost-

benefit analyses" whether they can "point to any actual harm" to bring suit. *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 677 (7th Cir. 2016).[8] Federal Rule of Evidence 406 permits: "Evidence of an organization's routine practice to prove that on a particular occasion the organization acted in accordance with the routine practice." Trustees do not invent new methodologies with each transaction; routine practices must be acceptable "general allegations" at the pleading stage.

- As in the leading decision on pleading a private company ESOP case, "the loan came from the employer-seller rather than from an outside entity (indicating that outside funding was not available)," which supports a "plausible story" of fiduciary breach resulting in harm. *Allen*, 835 F.3d at 678; AC ¶¶ 5, 52, 53.

- Horizon was appointed by PLM, while under the control of Selling Shareholders, to represent the counterparty Plan in the Transaction. (*Id.* ¶¶ 46-48). Selling Shareholders, who benefited from Horizon's breaches of ERISA in the Transaction, also rewarded Horizon with the position of ongoing trustee and fees that would be paid by the ESOP-owned company. (*Id.* ¶¶ 48, 73). In no transactions other than inherently conflicted "ESOP industry" transactions do sellers of a multimillion dollar company hire the counterparty with whom they ostensibly negotiate or bind the buyer to pay future fees of the seller-selected trustee through the company the buyer purchased.

The Amended Complaint therefore contains *both* general and detailed factual allegations of injury, and that injury is particularized, concrete, and actual, as explained in Part IV.B.1, *supra*. Plaintiffs have alleged the concrete and tangible injury of monetary losses to the Plan and themselves dating from 2017 that, therefore, are real and exist. They do not allege an abstract

---

[8] Plaintiffs' counsel litigated the leading private company ESOP decisions at both pleading and trial stages, and have litigated against numerous ESOP trustees, including Horizon. *See Brundle*, 919 F.3d 763 (affirming $29,773,250 judgment); *Allen*, 835 F.3d 670 (reversing dismissal); *Threadford v. Horizon Tr. & Inv. Mgmt., N.A.*, No. 2:20-CV-00750, 2021 WL 5105330 (N.D. Ala. Oct. 29, 2021) (denying motion to dismiss).

injury of the type barred under *Spokeo*. To be concrete and exist is to be "real and not abstract" – that's not a requirement to prove injury on the pleadings. *Spokeo*, 578 U.S. at 340 (cleaned up). And, contrary to Defendants' arguments, it is well-established that on this Motion the Amended Complaint's material allegations are accepted as true and the merits question of whether Plaintiffs can plausibly plead the elements of a cause of action is not at issue. *See* Part III, *supra*.

Defendants' reliance on *Plutzer v. Bankers Tr. Co. of S.D.*, 2022 WL 17086483 (2d Cir. Nov. 21, 2022), and *Lee v. Argent Tr. Co.*, 2019 WL 3729721 (E.D.N.C. Aug. 7, 2019), makes no sense other than that those outliers are the only existing dismissals on standing grounds of cases challenging ESOP formation transactions. Those cases are distinguishable because the only allegations of injury the courts identified were post-transaction drops in stock valuation; but that allegation is not in the Amended Complaint here, which makes numerous other allegations of injury. *See Laidig*, 2023 WL 1319624, at *6 (distinguishing *Plutzer* and *Lee*); *Placht*, 2022 WL 3226809, at *3 (same); *Lloyd v. Argent Tr. Co.*, No. 22CV4129, 2022 WL 17542071, at *2 (S.D.N.Y. Dec. 6, 2022) (same). *Plutzer* and *Lee* are irrelevant.

### 3.      The Initial Complaint and Post-Transaction Valuations are Irrelevant.

Defendants waste a lot of space urging the Court to consider Plaintiffs' initial complaint. To do so would not compel dismissal, as the initial complaint contains allegations much like the Amended Complaint, which distinguishes it from the complaints in *Plutzer* and *Lee*. Regardless, it is black letter law that the initial complaint is a "nullity" and "[o]nce an amended pleading is filed, the original pleading no longer performs any function in the case." *Rodriguez v. Cracker Barrel Old Country Store, Inc.*, No. 2:17-cv-20, 2017 WL 6349173, at *8 (E.D. Ky. Dec. 12, 2017) (citing authorities); *Kenney v. Paris Police Dept.*, No. 5:07-CV-358, 2011 WL 1582125, at *2 n.3 (E.D. Ky. Apr. 26, 2011); Fed. R. Civ. P. 15(a).

Defendants' apparent attempt to turn their 12(b)(1) facial attack into a factual attack by arguing the Court should take judicial notice that PLM stock rose in value after the Transaction, based on the Plan's Forms 5500, again ignores well-established law. When a court takes judicial notice of matters outside the pleadings, it may only consider the existence of these documents but not the truth of the specific factual allegations contained therein, as such factual allegations are subject to reasonable dispute. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467-68 (6th Cir. 2014); Fed. R. Evid. 201(b); *see also U.S. v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) ("Judicial notice is only appropriate if 'the matter [is] beyond reasonable controversy....The rule proceeds upon the theory that...dispensing with traditional methods of proof [should only occur] in clear cases.'") (quoting Fed. R. Evid. 201(b) advisory committee's note). Therefore in many ERISA cases the courts have held that Forms 5500 may be judicially noticed but their contents cannot be taken for their truth. *See*, *e.g.*, *Savage v. Sutherland Global Servs., Inc.*, 521 F. Supp. 3d 308, 312 (W.D.N.Y. 2021); *Birse v. CenturyLink, Inc.*, No. 17-cv-02872, 2019 WL 9467530, at *4 (D. Colo. Oct. 23, 2019); *Feinberg v. T. Rowe Price Grp., Inc.*, No. MJG-17-0427, 2018 WL 3970470, at *4 (D. Md. Aug. 20, 2018).

Defendants' argument that Plaintiffs made an admission against their interests goes nowhere because the initial complaint contested that post-Transaction valuations were accurate. (Complaint ¶ 74, Dkt. 1). A post-transaction rise cannot be probative of the value of stock on the date of the transaction because, among other reasons, companies make millions of dollars of contributions to their ESOPs annually, as required by their loans. A recent decision denying a motion to dismiss explains that where a plan sponsor was alleged to have paid millions of dollars into a plan after an ESOP transaction, "the Court is unable to assess at this early stage to what extent those contributions may have affected subsequent valuations." *Placht*, 2022 WL 3226809,

at *3. Should the Court consider Forms 5500 as Defendants suggest, they show such contributions were made here, with PLM making contributions of $4,125,781 in 2017, $4,912,250 in 2018, $4,819,500 in 2019, and $4,726,750 in 2020. *See* Plan's Forms 5500 at Schedule H, Part II, Line 2(a)(1). Further, the *Plutzer* complaint alleged a post-transaction stock *drop*, while here Defendants allege a post-transaction stock *rise*; these are not "the same allegations" as Defendants represent (Motion at 5), and evidence distinguishable cases.

To the extent Defendants argue the initial complaint's pleading on information and belief compels dismissal, the argument has no merit because: (1) the initial complaint is a "nullity"; (2) to plead on information and belief is not itself a factual allegation constituting an admission against interest; (3) the theory conflicts with the *Lujan* pleading standard allowing "general factual allegations" of injury; (4) on this motion a court must accept as true all material allegations of the complaint; (5) "an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story," *Allen*, 835 F.3d at 678; (6) such pleading is authorized, *Rotella v. Wood*, 528 U.S. 549, 560 (2000); (7) even if such allegations were not considered the initial complaint had plausible allegations of injury not so pleaded; and (8) the operative complaint plausibly alleges injury with those and additional facts.

Defendants' argument that injury in fact cannot be shown where a stock's value appreciated after an ESOP transaction is erroneous because fair market value is to be determined as of the date of the transaction. *See Chao*, 285 F.3d at 420, 444. Defendants do not understand the measure of plan losses in ESOP cases, which are calculated by subtracting the actual fair market value on the date of the transaction from what the plan paid for the securities. *Id.*; *Bruister*, 823 F.3d at 258, 265–66; *Brundle*, 919 F.3d at 781. An overpayment on company stock by an ESOP as of such date is *not offset by subsequent stock appreciation*. *See Brundle*, 919 F.3d at 782 ("Any subsequent

gains involving the stock, which the ESOP would have obtained regardless of the overpayment, have no bearing on that loss."). Even if PLM stock appreciated after the ESOP Transaction, that would not mitigate the Plan's losses.

Further, *Lee*'s conclusion that if an ESOP's stock is valued above zero in the weeks following a fully leveraged transaction the ESOP must have bought the stock "at a discount" and made "a tidy profit," and its participants lack injury-in-fact to bring a claim, reflects a misunderstanding of leveraged transactions. 2019 WL 3729721, at *4. In almost all new leveraged ESOPs involving company loans to the ESOP, the employer makes a contribution to the plan soon after, the plan in turn pays down its loan to the company, and the company in turn repays loans to sellers, thereby increasing the equity value of the company and the value of the stock. In other words, the first post-transaction valuation of the company is almost always positive regardless of whether the plan paid more than adequate consideration. To take *Lee*'s mortgage analogy, if a home buyer pays $2 million for a $1 million home, borrows $2 million, and immediately pays $100,000 on the loan, the home-owner's equity in the home is positive if one simply compares purchase price to debt, but it doesn't change the fact the home is really worth $1 million and the home-owner overpaid and overborrowed to the tune of $1 million, respectively. The courts therefore reject *Lee* as an outlier. *See Placht*, 2022 WL 3226809, at *4; *Laidig*, 2023 WL 1319624, at *5-6. Defendants' theory of fair market value is "voodoo economics" for expert rebuttal, and not grounds for a Rule 12 dismissal. Indeed, the Court will see that none of Defendants' experts will offer an opinion supporting this silly analysis of fair market value.

## V.      CONCLUSION

For these reasons, the Court should deny Defendants' motion to dismiss in its entirety.

Dated: April 6, 2023

Respectfully submitted,

**BAILEY & GLASSER LLP**

*/s/ Gregory Y. Porter*
Gregory Y. Porter (*pro hac vice*)
Ryan T. Jenny (*pro hac vice*)
1055 Thomas Jefferson St., NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
cnatale@baileyglasser.com
gporter@baileyglasser.com
rjenny@baileyglasser.com

**LUFF LAW FIRM, PLLC**

Christina T. Natale
10440 N. Central Expressway
Suite 950
Dallas, TX 75231
469-607-5822
Email: christina@lufflaw.com

**IZARD, KINDALL & RAABE LLP**

Robert A. Izard (*pro hac vice*)
Douglas P. Needham (*pro hac vice*)
29 South Main Street, Suite 305
West Hartford, CT  06107
Telephone: (855) 202-0260
rizard@ikrlaw.com
dneedham@ikrlaw.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of April 2022, a copy of the foregoing document was served on all counsel of record via ECF.

*/s/ Gregory Y. Porter*
Gregory Y. Porter