UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| KAREN MERROW, THOMAS JORDAN, and MICHAEL CROSS, on behalf of the P.L. Marketing, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,,<br><br>Plaintiffs,<br><br>v.<br><br>HORIZON BANK d/b/a/ HORIZON TRUST & INVESTMENT MANAGEMENT, THOMAS J. SCHUH, and TIMOTHY M. LOGSDON,<br><br>Defendants. | :<br>:<br>:   NO. 2:22-CV-00123-DLB-CJS<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**DEFENDANTS' REPLY BRIEF IN SUPPORT
OF THEIR MOTION TO DISMISS AMENDED COMPLAINT**

Defendants Horizon Bank, Thomas Schuh and Timothy Logsdon, by and through their respective counsel, hereby jointly file this Reply Brief in support of their Motion to Dismiss the Amended Complaint [DN 31].

**I.   INTRODUCTION**

This matter should be dismissed under Rule 12(b)(1) because the arbitration provision found in the ESOP's plan document strips this Court of its subject matter jurisdiction. That arbitration provision is enforceable because it merely changes the *procedure* by which participants like Plaintiffs may vindicate their rights, not the substance of those rights. Arbitration provisions that affect procedural waivers concerning statutory claims are valid and enforceable. *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). The arbitration provision here is likewise enforceable.

There is an additional basis for dismissal here – there is no sufficient factual basis for any allegation of injury-in-fact as required under Article III. Plaintiffs cannot plausibly assert that there was any concrete injury suffered by any plaintiff. Plaintiffs' Amended Complaint simply identifies the potential issues that *could* have occurred based upon allegations from other cases – but without sufficiently alleging what actually happened here.

Plaintiffs attempt to mock Defendants' arguments about the facial invalidity of Plaintiffs' alleged injury as "voodoo economics," but the only "voodoo economics" in this matter is Plaintiffs' assertion that the purchase of 100% of a company's shares for $53 million in 2017 constituted an "ERISA violation" for "overpayment" when the company's shares (after taking on $53 million of debt for the transaction) were worth more than $30 million six months after the transaction. Plaintiffs cannot assert the same speculative, conclusory allegations that were rejected in *Plutzer* to demonstrate Article III standing in this case. Defendants' Motion should be granted, and the Amended Complaint dismissed.

II.  **LAW AND ARGUMENT**

A.  **Defendants' Motion is Properly Brought Under Rule 12(b)(1)**

Plaintiffs first take issue with the Civil Rule that Defendants cited in seeking to invoke the Plan's arbitration provisions. Specifically Plaintiffs contend that Defendants' "Rule 12(b)(1) motion is meritless because an arbitration clause does not divest a court of subject matter jurisdiction." Opp. at 7.

Plaintiffs' argument should be rejected. For one, it elevates form over substance – it is beyond any reasonable question that the Defendants' motion places the arbitration dispute before the Court. Past that, Plaintiffs' position is substantively incorrect as claims subject to a valid and binding arbitration provision do indeed fall outside the Court's subject matter jurisdiction. The text of the Federal Arbitration Act ("FAA") supports this conclusion. *See* 9 U.S.C. § 4 (permitting a

2

party to an arbitration agreement to petition a federal district court "which, save for such agreement, would have jurisdiction" for an order compelling arbitration).

Plaintiffs ignore the Sixth Circuit's holding in *Simon v. Pfizer Inc.* that "a compulsory arbitration provision divests the District Court of jurisdiction over claims that seek benefits under an ERISA plan." 398 F.3d 765, 773 (6th Cir. 2005). They instead claim that *Teamsters Local Union 480 v. UPS*, 748 F.3d 281 (6th Cir. 2014) mandates overruling Defendants' motion. But *Teamsters* supports *Defendants* on the issue. There the defendant filed a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. The district court dismissed the case on that basis and while the Sixth Circuit disagreed (on issues having nothing to do with arbitration provisions) and found subject matter jurisdiction, the Sixth Circuit interpreted the defendant's motion as a Rule 12(b)(6) motion and then upheld dismissal. Meaning the lesson from *Teamsters* is that even if Plaintiffs are right – that Defendants should have raised the arbitration issue by invoking Rule 12(b)(6) or some other procedural mechanism – then the Court should reframe Defendants' argument so as to reach the crux of the dispute.

Plaintiffs misleadingly cite *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938 (6th Cir. 2021), for the proposition that "the Sixth Circuit construes FAA § 3 to mandate a stay on request, precluding dismissal if an arbitration clause is enforceable." Opp. at 8.[1] But *Arabian Motors* expressly contemplated that "[t]here may be situations in which a dismissal remains permissible." *Arabian Motors*, 19 F.4th at 942. The scenario here—where Plaintiffs bring ERISA claims subject to a compulsory arbitration provision—is one in which dismissal is not only permissible, but required. *See Simon*, 398 F.3d at 773.

---

[1] The imposition of a stay would not be procedurally proper. The FAA permits a stay only "on application of one of the parties," and no party has formally sought a stay here. 9 U.S.C. § 3; *see also Lopardo v. Lehman Bros., Inc.*, 548 F. Supp. 2d 450, 457 (N.D. Ohio 2008) ("A court may not *sua sponte* force parties to enforce an arbitration agreement.").

3

It is undisputed that Defendants' Article III motion properly arises under Rule 12(b)(1). Because the arbitration provisions also operate to strip the Court of subject matter jurisdiction, Defendants' Motion should be granted under Rule 12(b)(1).

### B.  The Arbitration Clause is Valid

The Court should dismiss Plaintiff's Amended Complaint and compel individual arbitration.

Plaintiffs' opposition brief is remarkable for how little of Defendants' principal arguments Plaintiffs even attempt to address. Start with the facts. Defendants noted in the motion that from the very inception of the ESOP that the Plan has contained a mandatory arbitration provision. By that provision, any participant agreed to "final and binding arbitration" of "any dispute, claim or controversy…[.]" ESOP § 7.6. That a participant would arbitrate his or her dispute with the Plan is not *an* option, it is *the* option: "the arbitration provisions in this Section shall be the sole and exclusive means for adjudicating such claims." *Id*. The Plan also took care to leave no doubt as to the form of the arbitration that was contractually intended: "No Class Arbitration or Class Relief: Each Participant…agrees that any Claims will be arbitrated individually and shall not be brought, heard, or arbitrated on a class or collective action basis unless both parties agree, in writing, to the contrary." *Id*. at § 7.7.

Plaintiffs' fail to challenge any aspect of these provisions. They do not contend, for example, that the provisions are vague or being misinterpreted by Defendants. They do not suggest the arbitration clause was later-added or somehow does not apply to these particular plaintiffs. Indeed Plaintiffs all but concede that their claims here fall within with plain language of the mandatory arbitration clause. *See* Opp. at 9 ("Nor is the question whether . . . Plaintiffs' claims are within the scope of the clause."). The plain language of the Plan as well as Plaintiffs' silence and tacit concessions go a long way to resolving this issue in favor of arbitration.

4

Plaintiffs fare no better on their legal arguments. Plaintiffs resist application of the Plan's express terms by claiming that the arbitration provisions are unenforceable where they "forbid[] assertion of statutory rights and remedies…[.]" But that is not what these provisions do, neither by language nor application.

Plaintiffs, as participants in the ESOP, have benefit accounts. The aggregate of these accounts represent the full value of the ESOP. Should a fiduciary breach duties under ERISA and cause the ESOP damage, absent a dispute resolution provision to the contrary, a participant could assert an action on behalf of the Plan under ERISA (502)(a)(2). If such action were successful, each participant would receive his or her share of damages allocated to their individual account. But that is just one option. As an alternative, participants like Plaintiffs here could also bring a direct, individual claim – that claim would assert the same cause of action under the same theory of liability and his or her potential recovery would be no greater nor less than the potential recovery to that beneficiary in a representative, Plan-wide action. And the aggregation of these individual claims by participants would equal the Plan-wide damages that might be recovered in a representative action.

Thus, contrary to Plaintiffs' argument, the arbitration provision in the Plan does not impermissibly limit the claims that Plaintiffs might assert nor does it limit the potential relief they might recover. Their statutory rights have not been unreasonably "eviscerate[d]" because they have not been prejudiced at all. Rather than affecting any substantive right, the arbitration provisions merely changes the *procedure* by which participants like Plaintiffs may vindicate their rights. The Supreme Court has consistently held that such provisions, even those that affect procedural waivers concerning statutory claims, are valid and enforceable. *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344.

5

The core of Plaintiffs' argument is that the Plan suffers unique damages that must be vindicated in a representative action and not, as contractually mandated, in arbitrations. But Plaintiffs never identify, generically or otherwise, what those damages are. Nor do Plaintiffs suggest that the whole of the damages that might be recovered by the Plan are anything other than the sum-of-the-parts that beneficiaries could recover in single-claimant arbitrations. Moreover, the Department of Labor's investigation and enforcement powers are available to supplement participants pursuing recovery for alleged losses on an individual basis.

The principal law Plaintiffs rely on is an out-of-context statement by the Supreme Court in *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U. S. 134 (1985) to the effect that 502(a)(2) claims are "brought in a representative capacity on behalf of the plan as a whole." But the Supreme Court later distanced itself from this earlier language in *Russell*, finding that the language was limited to the unique context – irrelevant here – of defined benefit plans. *LaRue*, 552 U.S. at 255-56 (confirming that there is no guaranteed right for a representative action in ERISA and that "[o]ther sections of ERISA confirm that the 'entire plan' language from *Russell*, which appears nowhere in Section 409 or section 502(a)(2), does not apply to defined contribution plans"). Plaintiffs rely on this "entire plan" notion throughout their opposition (*see* Opposition (Doc. 32) at 11-12, 14), a clear shortcoming given the Supreme Court's express limitation.[2]

*Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003), another case upon which Plaintiffs place much weight, is inapposite. The Sixth Circuit has "clearly limited" *Morrison* "to the validity of arbitration clauses in employment agreements where an employee's statutorily created federal civil rights are at issue." *Stutler v. T.K. Constructors*, 448 F.3d 343, 345 (6th Cir.

---

[2] Plaintiffs rely heavily upon *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090, 1106 (10th Cir. 2023) but the panel in *Harrison* overlooked that single-claimant arbitrations can provide full relief to an ESOP and its participants.

6

2006). *Morrison* held only that arbitration clauses may be unenforceable if the cost of arbitration would undermine "the purposes of federal anti-discrimination legislation." *Morrison*, 317 F.3d at 653. That case is therefore of limited utility outside of the Title VIII context. *See Stutler*, 448 F.3d at 345.

Plaintiffs also rely heavily on *Hawkins*, but the circumstances there were materially different than the present and, properly considered, actually support enforcement of the arbitration clause. In *Hawkins*, participants sued their employer alleging certain ERISA violations. Notably, the ESOP did not contain an arbitration clause in the language of the Plan. The defendant there sought to compel arbitration based on a provision in the participants' *employment agreements* that the defendant claimed was broad enough to encompass the filing of an ERISA claim in a representative capacity. In other words, the arbitration provision was *not* in the ERISA plan documents themselves. This made the difference in the Sixth Circuit failing to compel arbitration; the attempt to use the arbitration provision from the employment agreement was improper in that it sought to "dissolve[] the distinction between the Plan sponsor and the Plan as a legal entity." *Hawkins v. Cintas Corp.*, 32 F.4th 625, 637 (6th Cir. 2022). As relevant here, though the Sixth Circuit ultimately stopped short of deciding the issue, the court intimated that had the arbitration provision been in the plan itself, the decision might have been different. *Id*. ("True, Cintas could amend the plan documents to include an arbitration provision, which might accomplish the same goal."). In sum, *Hawkins* is no support to Plaintiffs and the fairest reading suggests the Sixth Circuit would likely bless an arbitration provision, like here, contained in the Plan documents themselves.

The arbitration provisions in this case are enforceable. The Motion to Dismiss should be granted.

## C. Plaintiffs' Recycled Boilerplate Assertions of Harm Do Not Satisfy Article III

The crux of Plaintiffs' argument in response to Defendants' Motion to Dismiss is that the Amended Complaint "alleges Horizon caused the Plan to pay more than fair market value for PLM stock," which "should end the inquiry" because that is "a question of fact." Opp. at 19. But Plaintiffs' self-professed beliefs do not sufficiently satisfy the requirement that "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). It is black-letter law that merely reciting the elements of a claim and asserting that there is a "question of fact" about those elements cannot survive a motion to dismiss, because Courts do not accept as true "legal conclusions" or causes of action "supported by mere conclusory statements." *See, e.g., Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*, 17 F.4th 645, 648 (6th Cir. 2021) (internal citations omitted).

Plaintiffs cannot conceal the dearth of properly alleged factual allegations, and the abundance of legal conclusions and conclusory statements. As an initial matter, Plaintiffs never explain the basis for their allegations – whether Plaintiffs actually have any "personal knowledge" or if the allegations are solely based upon their counsel's purported "knowledge and experience" with ESOPs, because they deleted the specific references to matters asserted upon "information and belief" when they revised their assertions for the Amended Complaint. Instead, Plaintiffs simply declare that the initial allegations are no longer relevant because the original Complaint is now a "nullity" and that their initial allegations were not improper. Opp. at 22-23. But Plaintiffs confuse Rule 15 with the facts required under Article III. The operative pleading before the Court is the Amended Complaint, but prior complaints constitute admissions against interest that the Court can consider on a motion to dismiss. *New England Health Care Employees Pension Fund*

8

*v. Ernst & Young*, 336 F.3d 495, 501-502 (6th Cir. 2003) (taking judicial notice of the plaintiff's earlier complaint against the defendant's client and holding that the statute of limitations barred the plaintiff's subsequent complaint against the defendant on a motion to dismiss); *Svete v. Wunderlich*, 2008 WL 4425509, at *4-5, 8 (S.D. Ohio Sept. 30, 2008) (considering the allegations asserted in the plaintiff's original complaint and deleted from the plaintiff's amended complaint when concluding that the plaintiff had sufficient knowledge to start the running of the statute of limitations that barred the claims asserted on a motion to dismiss).

Plaintiffs' original Complaint was filed on October 5, 2022 against Horizon and the former owners of PLM. Despite being asserted against a different trustee who undertook a different transaction with different sellers of a very different business, the original Complaint asserted essentially verbatim allegations from a complaint the same lawyers filed in *Plutzer* against Bankers Trust and the sellers of a company that manufactures clothing. After the Second Circuit affirmed the dismissal of the *Plutzer* case in November 2022, and Defendants noted the similarity of the two complaints in the original motion to dismiss, Plaintiffs amended their allegations, declaring their prior allegations a "nullity." But the facts alleged in the Amended Complaint are no better than the deficient facts alleged in *Plutzer*.

Plaintiffs assert that the company only had one client – Kroger, and its "multitude of merchandising and operational services for Kroger's General Office, divisions, and stores"[3] – which was not adequately considered in the transaction, and was the improper basis for "unreasonably optimistic" financial projections. Opp. at 19. But the paragraph of the Amended Complaint that is cited with respect to the projections, paragraph 61, does not actually say *why* the projections were unreasonably optimistic – it merely takes paragraph 63 of the *Plutzer* complaint,

---

[3] Amended Complaint, ¶ 23.

9

deletes the assertion that the paragraph "will likely have evidentiary support," changes the names of the parties, and adds additional conclusory statements devoid of any actual factual detail. As noted in Exhibit C to Defendants' Motion, the *Plutzer* allegation at paragraph 63 has been recycled for this case at paragraph 61 of the Amended Complaint. The *Plutzer* Court rejected these allegations as "speculative and conclusory." *Plutzer v. Bankers Tr. Co. of S.D.*, 2022 WL 17086483, *2 (2d. Cir. Nov. 21, 2022). The same is true here.

Likewise, generic criticisms of market valuation methods – that by definition compare a private company with companies that have shares traded on a public market[4] – do not support the assertion that Plaintiffs have been harmed *here* by any misapplication of those methods. Here, Plaintiffs simply identify the potential issue without any supporting facts. Plaintiffs' citation to another case (in a decision rendered after trial and on appeal) proves this point: demonstrating what actual evidence of allegations of market method flaws *could* look like, but is wholly lacking here regarding this different transaction. *Compare* Opp. at 20 *with Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 776 n.7 (4th Cir. 2019) (cited by Plaintiffs).

Plaintiffs' allegations regarding "control" are also the same as *Plutzer* – speculation that the ESOP overpaid, but without any factual assertions as required. And the allegations regarding the discount for lack of marketability are the very definition of conclusory: "Horizon failed to apply a sufficient discount for lack of marketability (DLOM) to its valuation because it failed to sufficiently account for the lack of marketability for the stock that was purchased by the ESOT." Opp. at 20 (citing *Amended Compl.* ¶ 72).

---

4  *Horn v. McQueen*, 353 F. Supp. 2d 785, 808, 825-26 (W.D. Ky. 2004) ("The market approach determines value by looking at the price set in a fair, efficient and fully-informed market, if not for shares in the business to be valued, in shares of comparable companies.")

Unable to muster any actual factual detail in support of Article III standing, Plaintiffs attempt to characterize their speculation as a "routine practice" within the ESOP community that warrants consideration under Evidence Rule 406. But even under Evidence Rule 406, any such evidence would only be admissible if Plaintiffs "establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Simplex, Inc. v. Diversified Energy Systems, Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988). Courts in this Circuit therefore are "cautious in permitting the admission of habit or pattern-of-conduct evidence under Rule 406." *Bell v. Consol. Rail Corp.*, 299 F. Supp. 2d 795, 800–01 (N.D. Ohio 2004) (*citing Simplex*, 847 F.2d at 1293) (excluding testimony at trial under Evidence Rule 406 that it was "not uncommon [or] unusual" for equipment to not function, because these "subjective and conclusory statements are insufficient" to demonstrate a routine practice).

Plaintiffs do not even try to satisfy the Evidence Rule 406 standard in the Amended Complaint. Instead, they offer only conclusory statements concerning an alleged failure to conduct sufficient due diligence. Those allegations are insufficient to satisfy Civil Procedure Rule 12, let alone Evidence Rule 406. *Plutzer*, 2022 WL 17086483, at *2 (rejecting allegations of insufficient diligence as "speculative and conclusory").

*Plutzer* and *Lee* are hardly "outliers" as Plaintiffs suggest. They are applications of Article III standing to the facts alleged in the cases before the court. Plaintiffs cite to other cases, such as *Allen v. GreatBanc Trust Co.*, 835 F.3d 670 (7th Cir. 2016) and *Placht v. Argent Trust Co.*, 2022 WL 3226809 (N.D. Ill. Aug. 10, 2022), from other circuits to suggest that this Court should follow these cases rather than *Plutzer* and *Lee*. But both *Allen* and *Placht* asserted more facts than simply the transaction was financed by the sellers, such as alleging a dramatic decline in the share price.

11

*See, Allen*, 835 F.3d at 679, *Placht*, 2022 WL 3226809, at *8. Here, Plaintiffs try to disclaim the allegations regarding the subsequent valuations because they do not support their theory of a dramatic decline, confirming that this case is like *Plutzer* – there is nothing to be reasonably inferred by the "up and down nature of the subsequent valuations" that Plaintiffs included in their original Complaint and deleted from the Amended Complaint. *Plutzer*, 2022 WL 17086483, at *2.

The Court can take judicial notice of the publicly-filed 5500 reports for the ESOP and the original Complaint to confirm that those values did not drop dramatically. For example, the 2017 5500 for the P.L. Marketing ESOP demonstrates that the value of the ESOP's assets as of December 31, 2017 was $36,820,492.[5] Even after accounting for a contribution of $4,125,781, the ESOP's stock in PLM was worth more than $30 million, confirming the conclusion in *Lee* that any residual equity value immediately following the transaction demonstrates that the ESOP received a discount, rather than overpaying. *Lee*, 2019 WL 3729721, at *4.

This case isn't *Brundle* after a trial; it's another *Plutzer* but without the acknowledgment that Plaintiffs' counsel has nothing more than a belief that the conclusory assertions might have evidentiary support. Plaintiffs' actual allegations in the Amended Complaint are not "general factual allegations of injury" but rather recycled, boilerplate speculation that does not satisfy the requirements for concrete, particularized injury under Article III.

### III. CONCLUSION

For the foregoing reasons, as well as those contained in Defendants' Motion to Dismiss and the initial memorandum in support, the Motion to Dismiss should be granted.

---

[5] As noted in the opening motion, every 5500 Report for the P.L. Marketing ESOP is publicly available at the DOL's web site – which can be searched at https://www.efast.dol.gov/5500search/. The 2017 5500 Report for P.L. Marketing is found at https://efast2-filings-public.s3.amazonaws.com/prd/2018/10/11/20181011114855P030236027847001.pdf

Respectfully Submitted,

| | |
|---|---|
| */s/ Scott J. Stitt* | */s/ Brian P. Muething* |
| Scott J. Stitt (*pro hac vice*) | Brian P. Muething (*pro hac vice*) |
| Tucker Ellis LLP | Jacob D. Rhode (*pro hac vice*) |
| 175 S. 3rd St., Suite 520, | Amanda Brooke Burton (KBA No. 96213) |
| Columbus, OH 43215 | KEATING MUETHING & KLEKAMP PLL |
| Telephone: 614-358-9717 | One East Fourth Street, Suite 1400 |
| Fax: 614-358-9712 | Cincinnati, OH  45202 |
| scott.stitt@tuckerellis.com | Telephone: 513.579.6400 |
| | Fax: 513.579.6457 |
| Mitzi D. Wyrick | bmuething@kmklaw.com |
| Wyatt Tarrant & Combs, LLP | jrhode@kmklaw.com |
| 400 W. Market St., Suite 2000 | sburton@kmklaw.com |
| Louisville, KY 40202 | |
| Telephone: 502-562-7337 | *Counsel for Defendants Thomas J. Schuh* |
| Fax: 502-589-0309 | *and Timothy M. Logsdon* |
| mitziwyrick@wyattfirm.com | |

*Counsel for Defendant Horizon Bank d/b/a Horizon Trust & Investment Management*

### CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2023, I electronically filed a copy of the foregoing with the clerk of court by using the CM/ECF system, which will send a notice of electronic filing to all registered CM/ECF participants in this matter.

*/s/ Scott J. Stitt*
*Counsel for Defendants*

5956936.2