UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL CASE NO. 22-123-DLB-CJS

KAREN MERROW, et al.                                                                                   PLAINTIFF

v.                              **MEMORANDUM OPINION AND ORDER**

HORIZON BANK, et al.                                                                                   DEFENDANT

\* \* \*\* \*\* \*\* \*\* \*\* \*\* \*\*

This matter is before the Court on Defendants' Motion to Dismiss Amended Complaint (Doc. # 31). Plaintiffs having filed their Response (Doc. # 32), and Defendants having filed their Reply (Doc. # 40), this matter is now ripe for review. For the following reasons, Defendants' Motion to Dismiss Amended Complaint is **granted in part** and **denied in part**. This matter is **stayed** pending arbitration.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Karen Merrow, Thomas Jordan, and Michael Cross ("Plaintiffs") brought this putative class action against Horizon Bank d/b/a Horizon Trust & Investment Management ("Horizon"), Thomas J. Schuh, and Timony M. Logsdon alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). (Doc. # 1 and # 22 ¶¶ 1, 3). Defendant Horizon was the fiduciary trustee for the P.L. Marketing, Inc. Employee Stock Ownership Plan (the "Plan" or "ESOP") when the Plan acquired the shares of P.L. Marketing, Inc. ("PLM") at issue in 2017. (*Id.*). Schuh and Logsdon ("Selling Shareholders") were PLM officers and directors, and are the party in interest shareholders from whom the Plan acquired the stock. (*Id.*). Plaintiffs were employees of

1

PLM, are Plan participants as defined in ERISA §3(7), and were vested in shares of PLM. (*Id.* ¶¶ 14-16).

PLM provides merchandising and operational services for The Kroger Company. (*Id.* at ¶ 23). Kroger is PLM's only client. (*Id.*). PLM adopted the pension Plan at issue with an effective date of January 1, 2017. (*Id.* ¶ 28). The Plan is a leveraged employee stock ownership plan, or "Leveraged ESOP" designed to invest in employer securities of PLM. (*Id.* ¶ 30). The Plan is a defined contribution plan, where a separate individual account was created for each Plan participant. (*Id.* ¶ 32). PLM is and was the Plan's administrator under ERISA §3(16)(A). (*Id.* ¶ 37). PLM also is and was an ERISA fiduciary to the Plan as its administrator. (*Id.* ¶¶ 38, 39). The Plan's Forms 5500 represent that PLM is a party in interest to the Plan. (*Id.* ¶ 40).

Plaintiffs allege that PLM "appointed Horizon as Trustee of the Plan prior to the ESOP Transaction, at a time when Selling Shareholders owned the company and controlled it as the sole directors and senior officers." (*Id.* ¶ 46). In this role, "Horizon had sole and exclusive authority to negotiate and approve the ESOP Transaction on behalf of the Plan including the price the Plan paid for PLM stock." (*Id.*). "Selling Shareholders, through PLM, appointed Horizon to be the buyer-side trustee on advice of their seller-side ESOP advisors. An unconflicted independent fiduciary did not make the appointment." (*Id.* ¶ 47).

Plaintiffs allege that PLM employees are "automatically enrolled in the Plan under the Plan's terms, without their election or assent." (*Id.* ¶ 44). This means "PLM employees do not have a choice whether to participate in the Plan as part of their

2

compensation package or to choose other compensation for their labor." (*Id.* ¶ 43). The Plan includes an arbitration clause, which states:

> Mandatory Arbitration; Waiver of Rights. In exchange for participation in this Plan, each Claimant agrees to arbitrate and be bound by the final and binding arbitration result of any dispute, claim or controversy arising hereunder, but only if and after it is denied in whole or in part pursuant to the claims process set forth in Sections 7.1-7.5 above. For avoidance of doubt, even if and to the extent that a Claimant believes a claim is not subject to such administrative claims process under applicable law, the arbitration provisions in this Section shall be the sole and exclusive means for adjudicating such claims. Each Claimant, whether pursuing a claim for benefits or other relief on behalf of the Plan as a whole, by participating in this Plan, is specifically waiving the right it otherwise would have had to sue the Company, Trustee, the Administrator or any party to whom administration or investment discretion is delegated hereunder in court and to have such claims decided by a judge or jury.

(Doc. # 31 at 4) (quoting ESOP § 7.6 (Exh. A)). The ESOP also includes a waiver of class arbitration.

> No Class Arbitration or Class Relief. Each Participant and Beneficiary, or any party claiming for or through them, agrees that any Claims will be arbitrated individually and shall not be brought, heard, or arbitrated on a class or collective action basis – unless both parties agree, in writing, to the contrary.

(Doc. # 31 at 4) (quoting Id., § 7.7(f))

The allegations in Plaintiff's Amended Complaint arise from a June 6, 2017 transaction ("ESOP Transaction") where the Plan and its trust purchased 100% of PLM shares from Selling Shareholders, who were PLM officers and directors. (Doc. # 32 at 3). In this Transaction, the Plan purchased 1,000,000 shares of PLM's common stock from Selling Shareholders for $53,000,000. (Doc. # 22 ¶ 51). The purchase of the shares was financed by a loan from PLM of $53,000,000, bearing an interest rate of 3.50%, annually, to be repaid over 20 years. (*Id.* at ¶ 52). Plaintiffs allege that the "parties resorted to financing by seller-controlled PLM because they were unable to arrange bank

3

financing for the ESOP Transaction." (*Id.* at ¶ 53). Plaintiffs further allege that a "prudent bank" would not have financed this transaction "without conducting robust due diligence on the loan to ensure that the collateral pledged, the stock, was actually worth $53,000,000." (*Id.*). Plaintiffs allege that Defendants financed the transaction themselves because they could not or knew they could not obtain financing from a bank. (*Id.*). Plaintiffs allege that the loan "was not primarily for the benefit of participants and beneficiaries of the plan, but rather was arranged in the interest of Selling Shareholders." (*Id.*).

Plaintiffs allege the ESOP Transaction caused them to suffer losses "in an amount to be determined following discovery and expert analysis of non-public information" under the ESOP because the Plan bought shares of PLM for more than their fair market value. (*Id.* ¶¶ 60, 74). Plaintiffs point to Horizon's valuation and appraisal methods and claim that "[t]he Plan overpaid for PLM stock in the ESOP Transaction due to the Trustee's reliance on unrealistic growth projections." (*Id.* ¶ 61). Plaintiffs further allege that PLM's business model of having a single client also led to an overstated valuation. (*Id.* ¶ 71). Plaintiffs allege that "[i]n accordance with its and industry routine practices, Horizon's due diligence in the ESOP Transaction was less extensive and thorough than the due diligence performed by third-party buyers in corporate transactions of similar size and complexity." (*Id.* ¶ 73).

Plaintiffs raise three claims under ERISA. (Doc. # 22). First, Plaintiffs allege Horizon violated ERISA § 406(a), 29 U.S.C. § 1106(a) because it participated in a prohibited transaction. (*Id*. ¶¶ 78-86). Second, Plaintiffs allege Horizon breached its fiduciary duty under ERISA § 404(a), 29 U.S.C. § 1104(a). (*Id*. ¶¶ 87-96). Third, Plaintiffs

4

allege Selling Shareholders knowingly participated in ERISA violations under 29 U.S.C. § 1132(a)(3).  (*Id*. ¶¶ 97-108).  Finally, Plaintiffs seek a declaratory judgement under 28 U.S.C. §§ 2201-2202 against all Defendants asking the Court to find the arbitration agreement in the ESOP unenforceable.  (*Id*. ¶¶ 109-119).

Defendants moved to dismiss this action pursuant to 12(b)(1) for lack of subject matter jurisdiction.  (Doc. # 31).  Defendants raise two arguments in their Motion to Dismiss.  First, Defendants argue this Court does not have subject matter jurisdiction because there is a binding individual arbitration agreement, and state that the Court must compel arbitration.  Second, Defendants argue Plaintiffs do not have standing because of their failure to allege an injury-in-fact.  The Court will consider each argument in turn.

II.     ANALYSIS

   A.     Standard of Review

A claim must be dismissed if the Court determines at any time that it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).  The plaintiff bears the burden of establishing the elements of federal jurisdiction.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Challenges to subject matter jurisdiction under Rule 12(b)(1) generally come as a facial attack or a factual attack.  *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  If defendants assert a facial attack, they are challenging sufficiency of the pleading.  *Id.*  In that instance, the court accepts the allegations in the complaint as true and determines if they establish federal claims.  *Id.*  If they do, the court has subject matter jurisdiction.  *Id.*  If defendants assert a factual attack, however, "no presumptive truthfulness applies to the allegations."  *Id.*

To assert federal jurisdiction, plaintiffs must have standing pursuant to Article III. "[W]here a plaintiff's Article III standing is at issue, the plaintiff must allege facts sufficient to establish the requisite individualized harm." *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 580 (6th Cir. 2016). At the motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561.

When considering a motion to compel arbitration, the court must first "determine whether the parties have agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). If the parties have agreed to arbitrate their claims, and the agreement to arbitrate is not at issue, then the court must compel arbitration. *See Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The party opposing arbitration must show "a genuine issue of material fact as to the validity of the agreement to arbitrate—a showing that mirrors the summary judgment standard" under Fed. R. Civ. P. 56(c). *Yates v. Royal Consumer Prod., LLC*, No. 3:22-CV-075-CHB, 2022 WL 3365075, at *2 (W.D. Ky. Aug. 15, 2022) (citing *Great Earth Companies, Inc.*, 288 F.3d at 889). In conducting this analysis, the court must draw all reasonable inferences in favor of the party opposing arbitration. *See id.*

**B.    Discussion**

Defendant argues this Court does not have jurisdiction to hear Plaintiff's claims because Plaintiffs lack standing and because Plaintiffs claims must be arbitrated pursuant the arbitration provision of the ESOP. Plaintiffs argue that if the Court does compel arbitration, this matter should be stayed rather than dismissed. The Court will consider each argument in turn.

### 1.     *Plaintiffs have standing to bring their claims in federal court.*

The Sixth Circuit has stated that "there are two components to any given standing inquiry: constitutional and statutory." *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016).  Under ERISA's civil enforcement provision, Plan participants and beneficiaries can bring suit to recover benefits.  *Brown v. BlueCross BlueShield of Tennessee, Inc.*, 827 F.3d 543, 545 (6th Cir. 2016) (citing 29 U.S.C. § 1132(a)(1)(b)). Plaintiffs in this case are beneficiaries because they are designated by the terms of the employee benefit plan and are entitled to a benefit under the Plan.  *Id*.  (citing 29 U.S.C. § 1002(8)).   As beneficiaries of the Plan, Plaintiffs here have statutory standing under ERISA.  However, statutory standing alone is not enough.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).  Defendants argue Plaintiffs have not adequately alleged constitutional standing under Article III because they have not alleged a concrete, particularized, and actual injury-in-fact.  (Doc. # 31 at 20).  The Court disagrees.

"To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1618 (2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560– 561 (1992)).  Injury-in-fact requires a showing of "particularization and concreteness." *Soehnlen,* 844 F.3d at 581.

A "particularized" injury affects the plaintiff in a personal and individual way. *Soehnlen,* 844 F.3d at 581–82 (citations omitted).  "A plaintiff must also show that he suffered a concrete injury, defined as a "de facto" injury, meaning that the injury "must

7

actually exist." *Id.* (quoting *Spokeo,* 578 U.S. at 340). The burden of proof the Plaintiff must meet depends on the stage of litigation. *Lujan*, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). A jurisdictional question of whether the plaintiffs have sufficiently stated an injury is different from a merits question of whether they have sufficiently stated a claim. *See Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053, 1057-58 (6th Cir. 2022).

Defendants argue Plaintiffs have not set forth plausible facts because their allegations were "originally identified as being asserted upon information and belief, but now rest upon an unclear foundation." (Doc # 31 at 19). However, this is not the correct inquiry. Rather, this Court will ask whether Plaintiffs have made "general factual allegations of injury resulting from the Defendant's conduct." *See Lujan*, 504 U.S. 555 at 561. Additionally, Defendants point to no Sixth Circuit precedent in their analysis of what they assert is the Plaintiff's vague and conclusory allegations. (*See* Doc. # 31 at 20-24). Rather, they rely on *Plutzer v. Bankers Tr. Co. of S.D.*, 2022 WL 17086483 (2d. Cir. Nov. 21, 2022), which is not binding on this Court. Under the applicable precedent, Plaintiffs have sufficiently stated an injury because they have alleged plausible facts to support a financial loss under the Plan.

The Sixth Circuit has differentiated standing where the plaintiffs are seeking individual relief and where they are seeking relief on behalf of the plan. *See Soehnlen*, 844 F.3d at 584. In *Soehnlen*, the court found plaintiffs did not have standing to bring

their ERISA claims because they had not established individualized harm. *See id*. The court specifically noted that in previous cases where the court has "allowed cases to go forward without compelling plaintiffs to show individualized injury, the cases were advanced under a different theory of liability than alleged by Plaintiffs." *Id.* That theory of liability was a breach of fiduciary duty claim seeking "recovery on behalf of the plan." *Id.* (quoting *Loren v. Blue Cross & Blue Shield of Mich*., 505 F.3d 598, 608 (6th Cir. 2007)). Here, Plaintiffs bring suit pursuant to §502(a), which allows a plaintiff to "bring suit. . . *on behalf of* their respective plans." *Loren v. Blue Cross & Blue Shield of Mich.,* 505 F.3d at 608 (emphasis in original).

Applying *Soehnlen* and *Loren*, this Court has previously found standing to sue under § 502(a)(2) where plaintiffs have alleged similar injuries. In *Boden v. St. Elizabeth Med. Ctr., Inc.*, this Court stated that "[b]y alleging a financial loss to the Plan premised on its underfunding, Plaintiffs' have sufficiently shown that they seek the appropriate remedy under ERISA § 502(a)(2)." No. CV 16-49-DLB-CJS, 2018 WL 1629866, at *6 (E.D. Ky. Apr. 4, 2018). Similarly here, Plaintiffs have alleged Defendants caused the Plan financial harm premised on the Defendants' administration of the Plan despite alleged conflicts of interest and Horizon's alleged inadequate investigation into the Plan's valuation. (*See* Doc. # 22 ¶¶ 80, 92-94). The overvaluation that Plaintiffs allege is plausible given the facts set forth by Plaintiffs—specifically that Horizon used improper valuation methods and "failed to apply a sufficient discount for lack of marketability (DLOM) to its valuation because it failed to sufficiently account for the lack of marketability for the stock." (Doc. # 32 at 28) (citing Doc. # 22 at ¶ 72). Additionally, Plaintiffs alleged that the "Selling Shareholders controlled PLM after the ESOP Transaction but the Plan

9

did not receive a discount for lack of control and improperly paid on a control basis." (Doc. # 32 at 28) (citing Doc # 22 ¶¶ 56, 59-60). These facts plausibly indicate that the Plan was financially harmed by actions of the Defendants.

The Court agrees with Plaintiff that the original Complaint is irrelevant because there are sufficient factual allegations in the Amended Complaint to support a finding that Plaintiffs have standing. Defendants state that the factual allegations by Plaintiffs "contain no basis for the Court to accept them as true" (Doc. # 31 at 22)—a statement that completely misunderstands the standard of review. At the motion to dismiss stage, the Court accepts all factual allegations in the Amended Complaint as true. *See Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Accepting all factual allegations as true leads the Court to conclude that Plaintiffs have plausibly stated a constitutional injury. Therefore, Plaintiffs have standing to bring their claims in this Court.

### 2. Plaintiff's claims must be arbitrated under the ESOP Agreement.

Defendants argue that the Amended Complaint should be dismissed because Plaintiffs' claims are subject to mandatory individual arbitration under the ESOP. The district court will not have jurisdiction to hear a claim if it falls within the arbitration agreement between the parties. *Simon v. Pfizer Inc.*, 398 F.3d 765, 772–73 (6th Cir. 2005) (citing *United Steelworkers v. Mead Corp.,* 21 F.3d 128, 132–33 (6th Cir.1994)). The central inquiry for the Court is whether Plaintiffs' claims fall within the arbitration clause such that arbitration should be required. *See id.* The Court concludes it does not have jurisdiction over this case because the "compulsory arbitration provision divests the District Court of jurisdiction over [Plaintiff's] claims that seek benefits under an ERISA plan." *Id.* at 773 (citing *United* Steelworkers, 21 F.3d at 132–33).

10

The broad arbitration provision within the ESOP is applicable to Plaintiff's ERISA claims. The Sixth Circuit has previously stated that "[w]hen faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration. *Id.* at 775 (citing *Masco Corp. v. Zurich Am. Ins. Co.,* 382 F.3d 624, 627 (6th Cir.2004)). The ESOP at issue here included such an arbitration provision. The provision stated in relevant part that "[i]n exchange for participation in this Plan, each Claimant agrees to arbitrate and be bound by the final and binding arbitration result of *any* dispute, claim or controversy arising hereunder [after administrative exhaustion]." ESOP § 7.6 (Exh. A) (emphasis added).

Plaintiffs have not alleged facts that would make this arbitration agreement unenforceable. Under the Federal Arbitration Act ("FAA"), agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (citing 9 U.S.C. § 2). The burden is on the Plaintiffs to show that the arbitration agreement is invalid. *See Great Earth Companies, Inc.*, 288 F.3d at 889.

Plaintiffs argue that the arbitration clause is unenforceable because it operates as a "prospective waiver" of statutory remedies. (Doc. # 32 at 17). However, this conclusion is based on a misinterpretation of the relevant case law. Plaintiffs cite to *Viking River Cruises, Inc. v. Moriana* for the proposition that "the FAA does not require courts to enforce contractual waivers of substantive rights and remedies." (*Id.*) (citing 142 S. Ct. 1906, 1919 (2022)). However, the Supreme Court went on to state that "[t]he FAA's mandate is to enforce '*arbitration agreements*.'" *Viking River Cruises, Inc.*, 142 S. Ct. at

11

1919 (quoting *Concepcion*, 563 U.S. at 344). And that "[a]n arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed." *Id*. Additionally, the Sixth Circuit has stated that "[a] district court's duty to enforce an arbitration agreement under the FAA is not diminished when a party bound by the agreement raises claims arising from statutory rights." *Stout*, 228 F.3d at 715.

Plaintiffs argue that under *Morrison v. Circuit City Stores, Inc.*, "arbitration agreements that eliminate statutory rights or the ability to pursue statutory remedies are unenforceable." (Doc. # 32 at 17-18) (citing 317 F.3d 646, 670-73 (6th Cir. 2003)). However, *Morrison* dealt with a Title VII claim, and the court there did not find the arbitration clause itself unenforceable, but rather found just its cost-splitting arrangement and limitations on damages unenforceable. 317 F.3d at 670-73. No such limitations on recovery exist in the arbitration provision at issue here.

Plaintiffs' citation to *Hawkins v. Cintas Corporation* also does not support its arguments. Plaintiffs argue that "a plan cannot agree to prospectively waive statutory rights and remedies any more than any other party to an arbitration agreement, and *Hawkins* says nothing to the contrary." (Doc. # 32 at 21). However, what *Hawkins does* say is that the Plaintiffs cannot be compelled to arbitrate their claims under the Plan based on an arbitration agreement within their employment contract. *See Hawkins v. Cintas Corp.*, 32 F.4th 625, 635 (6th Cir. 2022), *cert. denied,* 143 S. Ct. 564, 214 L. Ed. 2d 335 (2023) ("because the arbitration provisions only establish the Plaintiffs' consent to arbitration, the employment agreements do not subject these claims to arbitration."). This is different from the present case where the arbitration agreement is within the ESOP— not Plaintiff's employment contract. Because the context of the arbitration agreement in

*Hawkins* was completely different, the Court disagrees that "a plan cannot agree to prospectively waive statutory rights and remedies" as Plaintiff suggests. (See Doc. # 32 at 21). The Court will not read this limitation into *Hawkins*. Therefore, the Court concludes that Plaintiff's claims must be brought in arbitration pursuant to the ESOP's arbitration provision. While captioned "Motion to Dismiss Amended Complaint," defendants also state within their argument that "Defendants' motion to dismiss and compel arbitration should be granted." (Doc. # 31 at 9). The Court will therefore construe this Motion to Dismiss as a Motion to Dismiss, and in the alternative, Motion to Compel Arbitration, and grant the latter motion.

### 3. This case must be stayed pending arbitration.

Because Plaintiffs have standing to bring their claim in this Court, and the Court has concluded that it must compel arbitration, this suit must be stayed. The Sixth Circuit has stated that under § 3 of the FAA, when a district court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration. . . [it] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Arabian Motors Grp. W.L.L. v. Ford Motor Co.,* 19 F.4th 938, 941 (6th Cir. 2021) (quoting 9 U.S.C. § 3). § 3 of the FAA renders a stay a "mandatory obligation." *Id.* Plaintiffs have requested this action be stayed rather than dismissed if the Court compels arbitration. (Doc. # 32 at 8). Because the Court will grant Defendant's Motion to Compel Arbitration, this action will be stayed.

13

### III. CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) Defendant's Motion to Dismiss (Doc. # 31) is **GRANTED** to the extent the Court will **compel arbitration**, and **DENIED** to the extent the Court will not dismiss the claims; and

(2) This action will be **STAYED** pending arbitration of the claims.

This 24th day of October, 2023.



Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\ORDERS\Cov2022\22-123 MOO re MTD and Compel Arbitration.docx